Mozelle CLARK, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.

No. 79-3622.

United States Court of Appeals, Fifth Circuit. Unit B

July 17, 1981.

Rehearing Denied August 7, 1981.

Phillip A. Bradley, Georgia Legal Services, Conyers, Ga., Deborah S. Ebel, Atlanta Legal Aid Society, Atlanta, Ga., for plaintiff-appellant.

Curtis E. Anderson, Asst. U. S. Atty., Holly A. Grimes, Asst. Reg. Atty., Atlanta, Ga., for defendant-appellee.

On Petition for Rehearing

Before TUTTLE, TJOFLAT and KRAVITCH, Circuit Judges.

TUTTLE, Circuit Judge:

We have carefully considered the appellee's petition for rehearing in this case. In the original briefs of the parties in this Court, the notice furnished to Mrs. Clark was treated as the notice we quoted in our opinion, 638 F.2d 1347. It now appears that Mrs. Clark actually received a different notice. We therefore withdraw the original opinion and substitute the following in its place:

Mrs. Mozelle Clark appeals from a decision of the district court affirming the decision of the Secretary of HEW that claimant was not entitled to a period of disability insurance benefits, or security income under the Social Security Act, 42 U.S.C. § 405(g), § 416(k), § 423(d) and § 1381. The case was assigned here for oral argument rather than being disposed of on the summary

calendar because of problems arising from the kind of notice given by the Secretary to the claimant touching on her right to be represented by counsel at the hearing before the administrative law judge, the availability of free legal services for such appearance, and notice of the statutory limitations on the fees that lawyers are permitted to charge under a private contract with the claimant.

### 1. STATEMENT OF THE CASE

Appellant is a 43 year old woman with a seventh grade education. She can read and write when she has glasses. At the time of the hearing, she had no glasses and stated that she had been unable to buy them. All of her work experience has been as a domestic, a maid or cook. Her last regular work had occurred in 1973 although there is some evidence that she had worked briefly in 1975. Appellant applied for Social Security disability insurance benefits and supplemental security income on May 18, 1977. She alleged that because of blood clots, thyroid problems, chronic bronchitis and eye trouble she had been unable to work since July, 1973. In May of 1976, upon a previous application for benefits for disability allegedly beginning in 1974, she had been denied relief. The magistrate considered that period to be administratively barred for benefits by the doctrine of res judicata. The current application was denied initially July 8, 1977 and on reconsideration, on September 7, 1977. Appellant then filed a request for a hearing. The notice of hearing informed her of the date and location of the hearing. On the reverse side of the notice, there was contained the following statement:

> While it is not required, you may be represented at the hearing by an attorney or other qualified person of your choice. If you wish attorney representation and cannot afford it, your social security office will provide a list of offices where you may be able to obtain representation. Any fee which your representative wishes to charge must be approved by the Bureau of Hearings and Appeals, and your representative must furnish you with a

copy of the fee petition. When you receive your copy of the petition, you will have a period of 20 days to comment, if you wish, regarding the requested fee.

> Payment of any approved fee for any services rendered on your behalf with respect to your claim for *Supplemental Security Income* is a matter to be settled between you and your representative.

> If you are found entitled to *Disability Insurance Benefits* and your representative is an attorney, 25 percent of your back benefits will normally be withheld pending approval of a fee for your attorney. If the approved fee is less than the 25 percent withheld, the amount of the fee will be paid to your attorney from the amount withheld and the difference will be sent to you. If the approved fee is more than 25 percent of your back benefits, the 25 percent withheld will be paid to your attorney and the difference is a matter to be settled between you and your attorney. If your representative is not an attorney, none of your benefits will be withheld, and payment of any approved fee is a matter to be settled between you and your representative.

On December 14, 1977, appellant appeared, unrepresented, before the ALJ who conducted the hearing by examining the appellant and a vocational expert. Mrs. Clark's testimony and the clinical records introduced in the administrative file were sufficient to have warranted a finding that Mrs. Clark suffered from "an impairment or a combination of impairment of sufficient severity to preclude substantial gainful activity for a long, continuous and indefinite period of time or a continuous period of 12 months or more, or that would result in death."

The ALJ then called on the vocational expert (VE) who had been present during the hearing and who had read the documentary evidence. The judge then posed two hypothetical questions to the VE. In the first, the VE was asked to assume that all of appellant's testimony was credited, including the testimony with respect to her subjective complaints and to then give an opinion as to her ability to work. The VE

responded that under those circumstances, it was his opinion "that there would be no jobs that she would be able to perform on a full time basis." In the second hypothetical question, the VE was asked to assume that appellant had a vision problem correctable by glasses, a thyroid condition currently under control with treatment, and mild blood clots in her legs, that she could stand and walk at least four out of eight hours and could sit and work as much as six out of eight hours. He was then asked as to her ability to work. In response the witness testified that appellant would be able to engage in light work such as short order cook, cafeteria line, or light domestic work.

Immediately following the testimony by the VE, without voluntarily suggesting to the appellant that she could cross-examine him, the ALJ explained to the claimant what the VE's answers meant then said: "Is there any one doctor that knows more about your condition than anybody else?" She gave the name of Dr. Ferry but stated that he had not examined her for two or three years because she had a big bill from him and had no money to pay him. Mrs. Clark produced no personal physician nor other medical witness to testify as to her complaints.

The administrative law judge found that the claimant met the special earnings requirements for disability purposes in July, 1973. He then made the following findings of fact among others:

3. The claimant's impairments are poor vision correctable with glasses, mild localized venous thrombosis, mild airway obstruction, and hypothyroidism.
4. The claimant's pain is not of sufficient severity or frequency to be disabling.
5. The claimant maintains the residual functional capacity to work as a light domestic worker, short order cook, and cafeteria line worker.
7. The claimant is not under a disability as this term is defined in the Social Security Act, as amended.

In the opinion the judge stated:

The claimant's allegations of pain have also been considered by the Administrative Law Judge, since pain in itself can be disabling. However, based on the evidence of record, the Administrative Law Judge has concluded that the claimant's pain is not of sufficient severity or duration to be disabling. In reaching this conclusion, the Administrative Law Judge has resolved the credibility issue against the claimant. The claimant takes potent pain medication on an infrequent basis, and she did not appear to be in significant pain at the hearing. Her description of her social and leisure activities was also inconsistent with an individual in severe pain.

Appellant filed this action in the district court on July 7, 1978. The magistrate, to whom the matter had been referred, issued a report and recommendation that the decision of the Secretary be affirmed on February 23, 1979. The magistrate's report was approved by the district court on March 15 and claimant's action was dismissed. Claimant then filed a motion to alter or amend the judgment, in response to which the district court entered an order on June 22, 1979, adopting a rule requiring that the Secretary inform all claimants of the availability of free legal services; he thus remanded the case to the magistrate for a hearing on the issue of claimant's status as an indigent. However, before the hearing was held, the Secretary filed her motion to alter or amend, and on September 28, 1979, the district court entered an order reinstating its original dismissal of the claimant's action and affirming the Secretary's decision. Thereupon, the claimant filed her timely notice of appeal.

## II. CLAIMANT'S RIGHT TO NOTICE OF RIGHT TO COUNSEL

Because of the importance of the problems arising out of the appellant's contention respecting her right to be represented by counsel, appropriate notice advising her of such a right, and the special obligations placed upon an administrative law judge in the event a claimant appears without counsel, we discuss this matter first.

The Supreme Court has not recognized a Constitutional right to counsel at a Social Security hearing. *Goodman v. Richardson*, 448 F.2d 388 (5th Cir. 1971). Nevertheless, a claimant has a statutory right to counsel at such a hearing. 42 U.S.C. § 406. This right is effectuated by regulation. 20 C.F.R. § 404.971. The parties both agree that in order for this regulation to be effective, there is an obligation on the part of the Secretary to notify the claimant of his or her right to be represented at the hearing before the administrative law judge. This duty is at least implicit in this Court's cases. *Herridge v. Richardson*, 464 F.2d 198 (5th Cir. 1972); *Goldberg v. Kelly*, 397 U.S. 254, 270–71, 90 S.Ct. 1011, 1021–22, 25 L.Ed. 287 (1970); *Cross v. Finch*, 427 F.2d 406 (5th Cir. 1970).

The Secretary here contends that adequate notice of the right to be represented by counsel was given to the claimant before the hearing and that at the hearing, Mrs. Clark elected to proceed without counsel, thus waiving such right. We must therefore consider the notice upon which the Secretary bases her argument. This notice, which is quoted above, completely fails to notify the claimant of all of the important facts touching upon her right to, and opportunity to have free representation at the hearing. In fact, while we do not determine that the notice is intended to discourage a claimant from obtaining the aid of counsel, we do determine that the entire tone of the notice is more than likely to have that effect. Although it says, "if you wish attorney *representation* and cannot afford it, your Social Security office will provide a list of offices where you may be able to obtain *representation*" this statement is followed immediately by the statement, "any fee which your *representative* wishes to charge must be approved by the Bureau of Hearings and Appeals...." [Emphasis added.] It seems clear that the natural assumption from this notice is that any representative whom the claimant may seek will have the right to demand a fee for these services. Moreover, this notice lacks very important information that in no event could such a fee exceed 25% of the

recovery for amount due up to the date of the award. 42 U.S.C. § 406(b)(1).

We realize that there is no way that the notice to the claimant could guarantee the availability of free legal services. Such services may or may not be available in the particular community in which the claim is pending. We do note, however, that in the office in which this claim was pending there are several federally funded or locally supported legal service groups whose entire existence is for the purpose of handling civil claims such as the one filed on behalf of Mrs. Clark. The district court for the same district has determined that free services are available in the Atlanta area. *Barker v. Harris*, 486 F.Supp. 846 (N.D.Ga.1980).

This Court's cases, *supra*, comment on the waiver of the right to representation by the claimant at the hearing. We therefore, turn to what occurred when Mrs. Clark appeared without counsel before the administrative law judge. The following transpired at the hearing:

OPENING STATEMENT BY ADMINISTRATIVE LAW JUDGE

ALJ: All right. I'll go on the record in the case of Mozelle Clark. Are you Mrs. Clark?

CLMT: Yes, sir.

ALJ: Mrs. Clark, I'm Edwin G. Salyers, Administrative Law Judge with the Social Security Administration. This is Mrs. Evans, my Hearing Assistant, who'll be taking this down on a tape recorder today. We also have with us Dr. Sam Mitchell. Dr. Mitchell is a vocational expert.

In the notice that we sent, we advised that you have a right to have an attorney present at one of these proceedings. It's not required that you have an attorney, and it's my obligation to see that you are treated fairly and that your record is complete, so since you're here without an attorney, I presume you want me to go ahead without one. Is that right?

CLMT: I don't have any money to get one.

ALJ: All right. You're applying for both regular disability benefits and also supplemental security income.

We conclude that because of the inadequacy of the notice and the answer which the claimant gave to the administrative law judge her failure to have counsel may have been due to her lack of money. There was no waiver of the right to representation in this case. We must then resolve the inquiry. What effect does this have upon the hearing conducted by the ALJ?

■ It seems that even where the right to representation is waived by the claimant, this Court has held that the record must disclose that there has been a full and fair hearing. "There has been no showing of such a clear prejudice or unfairness ... caused by ... lack of counsel as would warrant a reconsideration of ... his claims by the Secretary." *Cross v. Finch, supra*, at 409. *See also Goodman v. Richardson, supra*, at 389 and *Herridge v. Richardson, supra*, at 200. Where the right to representation has not been waived, as is true in this case, we believe the correct standard of review by the courts is as set out in *Barker v. Harris*, 486 F.Supp. 846 (N.D.Ga.1980) where in a case in which the district court found that there had been no waiver of the right to representation the court said:

> The Court adopts the view of *Allison v. Matthews*, No. C75 2142A (N.D.Ga. March 3, 1977) and *Smith v. Califano*, No. C76 260A (N.D.Ga., May 31, 1977), *see also Rosa v. Weinberger*, 381 F.Supp. 377 (E.D.N.Y.1976), holding that an Administrative Law Judge's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him. Measured by this standard, the Court finds that Plaintiff did not receive a full and fair hearing and that she was prejudiced by lack of counsel.

486 F.Supp. 846, 849.

Under this standard, we are not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ.

## III. *A FULL AND FAIR HEARING*

■ At the outset, we wish to make it clear that we recognize that under the provisions of the appropriate statutes, the governmental policy is to provide protection to millions of wage earners under varying circumstances, and that when claims of disability arise, the policy strongly favors prompt handling and disposition of the claims. It is understandable, therefore, that the agency representatives properly wish to avoid unnecessary delays in reaching and deciding these cases, of which there are hundreds of thousands each year. *See Easley v. Finch*, 431 F.2d 1351 (4th Cir. 1970). We note that in the three cases in which we heard oral arguments in the same sitting of this Court, the hearings before the administrative law judge consumed 30 minutes, 35 minutes, and 51 minutes respectively. We do not criticize the conduct of the three administrative law judges on the ground that any one of them intended to be unfair or intended to establish a record of the number of cases that would be disposed of in a single day. Moreover, we recognize that the presence of counsel in these three cases would inevitably have extended the length of the hearings and thus have delayed the disposition of other cases waiting to be tried. Nevertheless, recognizing that these claimants individually were to be gravely affected in their economic lives for the period of their entitlement, we must consider the hearings in light of some of the requirements normally recognized in deciding cases involving problems of such moment.

Mrs. Clark, as it appears in the record, seems to have been functionally illiterate. In the language of the illiterate person she stated her testimony by saying: "Everything wrong with me." She ended it by saying, "From my head to my feet you got everything. I hurt." Any lawyer prepared for a hearing of the kind would realize that the statement of such subjective matters by the claimant would be the kind of evidence that most required supporting testimony by family or friends. Although the inquiry by the administrative law judge brought forth answers that Mrs. Clark suffered from

headaches continuously and that she coughed all the time and that she suffered pain constantly, his opinion indicated that he disregarded this evidence, coming as it did solely from her, on credibility grounds.

Counsel also might reasonably have been expected to develop from the claimant the manner in which the pain of which she complained affected her performance of any gainful occupation. The failure to stress these facts led the ALJ into making a determination bearing on his resolution of the credibility issue as to pain against the claimant that is clearly without support in the record. He stated: "Her description of her social and leisure activities was also inconsistent with an individual in severe pain." The only record evidence dealing with Mrs. Clark's social and leisure activities were the following:

Q: All right. As a result of all these problems you've got, do you have trouble walking now?

A: I have trouble.

Q: What can you do, and what can't you do?

A: What ... what ...

Q: Well, can you walk on level ground pretty good?

A: I ... I walk, but my feet hurt. They're real sore about on the bottom. Legs hurt, too.

Q: So you can't walk very far.

A: Not far. Then I get out of breath, too. I get short-winded.

Q: You get short of breath? OK. How about just standing? Is that a problem for you?

A: I don't just stand. I try to ...

Q: Not long?

A: ... set down or lay down now.

Q: OK.

A: It hurt.

Q: How about sitting? Is that any problem for you?

A: Not when I keep my feets up.

Q: All right.

A: I got a thing I keep my feets on at home. He told me ...

Q: A little stool or something that you put your feet up on?

A: That's right, or the coffee table.

Q: How about using your hands and arms and shoulders? Is that any problem for you?

A: Unless'n I'm hanging out clothes is a problem, but just using them ...

Q: Do you do your own clothes ... wash your own clothes, hang them up?

A: No. My daughter do it. We went and got the washing machine that stay below me. I don't have a washer.

Q: OK. Can you take care of your personal needs? That is, dress yourself, bathe, comb your hair and so on?

A: I can dress myself, but my daughter do my hair when I do it that way.

.    .    .    .    .

Q: Uh-huh. And who does the housework there?

A: Shirley. My daughter.

Q: Your daughter?

A: Got the two children, and Junior, too, when he there. They do all the mopping and all.

Q: Uh-huh. How do you spend your days now? What do you do since you're not working?

A: Set around the house. Look at those walls.

Q: Don't get out any?

A: Only Sunday. I go to church.

Q: OK.

A: Got nowhere to go. That's (INAUDIBLE).

Q: Do you ever do any visiting of your relatives or friends?

A: I go to my momma's sometimes when my son will take me.

.    .    .    .    .

Q: These headaches that you have ... do you have them all the time?

A: I have them all the time.

Q: All right. Do you have to rest much during the day?

A: Yes. Sir.

Q: About how much of your time do you spend resting?

A: Just about all day. I ain't got nothing else to do.

The ALJ might have well discounted Mrs. Clark's testimony as to the degree of pain from which she suffered, but clearly not on the ground that "her description of her social and leisure activities was also inconsistent with an individual in severe pain." It is difficult to see how anybody could have described any social or leisure activities more consistent with severe pain than those described by the claimant here.

Another area in which it is plain that counsel would almost inevitably have aided the claimant is in the matter of the hypothetical questions put to the vocational expert by the administrative law judge. In the second hypothetical question, the vocational expert was asked "to consider that in view of [Dr. Mauldin's] diagnosis, that she has these functional capacities. She can lift 50 pounds occasionally and 20 pounds frequently. She can stand and walk at least four out of eight hours. She can sit and work as much as six out of eight hours." The basis for this assumption in the hypothetical question was a report by Dr. John P. Mauldin of the Atlanta Health Evaluation Center. It does not appear anywhere in the record that these functional capacities stated in Dr. Mauldin's report were based on any tests made of the claimant by him. A lawyer would, of course, examine Mrs. Clark as to whether she had been required to lift a weight of 50 pounds or if she had undergone any tests before him to determine whether she could stand and walk at least four out of eight hours or sit and work as much as six out of eight hours.

Finally, it was clear that the claimant was not notified that she had the right to cross-examine the vocational expert at all. Such questioning as conducted by a lawyer would, it seems in light of her testimony about a constant cough, have almost required that he ask of the expert whether having a constant cough would reduce the likelihood of her being available for performing the duties of a "short order cook" or a "cafeteria line worker," both of which jobs he stated were open for one of her capabilities.

It is inconceivable that a person complaining of the constant headache and coughing as did Mrs. Clark, would not have a private physician examine her with a view towards supporting her evidence in this regard. Counsel would at least have made it plain to her that her case would be much strengthened if she had an up to date physical examination by a physician of her choice, rather than a report made by a doctor several years previously. We recognize, of course, that a privately selected physician might not find a clinical basis for supporting Mrs. Clark's asserted physical problems. However, on this record we conclude that the plaintiff did not receive a full and fair hearing and that she was prejudiced by lack of counsel.

The judgment is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.