**Domingo ECHEVARRIA, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HU-
MAN SERVICES OF the UNITED
STATES, Defendant.**

**No. 79 C 645.**

United States District Court,
E. D. New York.

Dec. 22, 1981.

Arthur J. Fried, New York City (Kalman Finkel, John E. Kirklin, John P. Cunningham and Kathleen A. Masters, The Legal Aid Soc., New York City, of counsel), for plaintiff.

Edward R. Korman, U. S. Atty., E.D. N.Y., Brooklyn, N.Y., by Cyril E. Hyman, Asst. U. S. Atty., Brooklyn, N.Y., for defendant; Frank V. Smith, III, Regional Atty., Region II, and Annette Blum, Asst. Regional Atty., Dept. of Health & Human Services, New York City, of counsel.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff commenced this action to review a final determination by the defendant Secretary of Health and Human Services denying plaintiff's dual applications for Social Security disability insurance benefits and Supplemental Security Income (SSI). 42 U.S.C. §§ 405(g), 416, 423 and 1382. The Secretary moved for judgment on the pleadings and following receipt of the administrative record, the matter was referred to a United States Magistrate to review the record and report his recommendations to the Court.

The Magistrate has since submitted his report recommending that the case be remanded to the Secretary for re-evaluation under the new regulations, 20 C.F.R. §§ 404.1502–1513 and Subpart P, App. 2.

After an independent searching review of the administrative record, the Court is of opinion that the Secretary's determination adequately took into account all essential matters submitted on behalf of plaintiff, is supported by substantial evidence and should be affirmed.

Plaintiff, age 52 at the time of his *de novo* hearing before the administrative law judge (ALJ) on October 13, 1978, had worked steadily for the same employer for some 14 years until October 1976. His job was sedentary, stapling linings in ladies' handbags and folding them while sitting down. Tr. 31, 37, 38.[1] He left that job in October because of a "sudden" attack of "arthritis," Tr. 33, and collected unemployment benefits for about 39 weeks.[2] After that he found he could not return to his former job because the factory was closing down. Tr. 34. At the hearing he testified that he was always looking for jobs or "parttimes" [jobs] near where he worked but there was a shortage of work. Tr. 36, 37.

Plaintiff, a native of Puerto Rico, has been living in the United States for 17 years. He has an eighth grade education and reads and writes in Spanish but knows very little English. Tr. 9. A Spanish interpreter translated his responses, which appeared to be fluent, and he had with him as representative Eduardo Gonzalez, a social service coordinator of the Community Development Agency.

At the request of the ALJ, Dr. Charles M. Plotz, a specialist in internal medicine, testified as a medical advisor regarding his examination of medical records concerning plaintiff. Tr. 45. He is Chief of the Arthritis Clinic at the Downstate Medical Center, and based upon his *curriculum vitae*, Dr. Plotz appears to be an authority on rheumatism and arthritis, Tr. 132–35. Noting that plaintiff's chief complaints were aches and pains in his feet and spine, Dr. Plotz testified that x-rays of the feet revealed an old operation with evidence of "a

small amount of osteoarthritis." He found x-rays of plaintiff's spine essentially normal except for mild congenital variation with no evidence of arthritis, and blood tests also did not reveal evidence of rheumatoid arthritis. Tr. 46. Dr. Plotz did not think it advisable for plaintiff to have a job standing all day, because of his congenital foot deformity, but could have one that involved sitting, Tr. 50, and could easily walk the normal amounts required for daily living. Tr. 48.

As the Magistrate noted, according to medical reports, plaintiff was initially treated as an outpatient at Kings County Medical Center for "mild rheumatoid arthritis," Tr. 82–83, from October 1976 through March 1977. Although plaintiff complained of knee pains, x-rays taken during that period revealed no bone abnormality. Tr. 89. Dr. Falk, who treated him, stated in a brief note that plaintiff "may be unable to work until this flare is controlled." Tr. 92. On February 10, 1978, plaintiff was examined by Dr. Sidney Lipton, a general surgeon, who diagnosed his condition as low back syndrome but observed that plaintiff exhibited a normal range of motion and only "mild pain." Tr. 103. A contemporaneous radiological examination by Dr. Norman Dinhofer suggested plaintiff had a "congenitally unstable back" as well as a congenital variation of his right foot. Tr. 104. Neither Dr. Lipton nor Dr. Dinhofer voiced any opinion regarding plaintiff's ability to work. On April 12, 1978 plaintiff was examined by Dr. Joan Olivera regarding complaints of pain in his feet. Her diagnosis was "osteoarthritis rheumatoid" but no opinion was expressed regarding ability to work. Tr. 148–51. In August 1978 plaintiff was seen at the Grupo-Medico Clinic, where Dr. H. Bryant reported that plaintiff complained of pain in the feet, which was diagnosed as "traumatic arthritis" in the midtarsal area. In Dr. Bryant's opinion, the condition "will worsen in due time and *may* result in his disability." Tr. 118, emphasis supplied.

---

1. References are to pages of the administrative record.

2. Which he was aware required a representation that he was seeking work but was unable to find any. Tr. 34, 36.

The Secretary, of course, may rely upon written reports of medical examinations as "substantial evidence" to support a finding of non-disability. *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971). Aside from plaintiff's own admissions, the medical reports clearly show that his medical condition was not severe enough to warrant a finding of disability, as the Magistrate acknowledged. The Magistrate's recommendation, despite the reports, that the Secretary might consider plaintiff disabled under the new regulations completely misapprehends the scope of those regulations. First, it is important to bear in mind that a reviewing court is bound by the facts as they existed at the time of the ALJ's decision as adopted by the Secretary. See *Miles v. Harris,* 645 F.2d 122, 124 n.1 (2d Cir. 1981). When, as here, the finding of non-disability is supported by substantial evidence, it is conclusive as of the date of the ALJ's decision. If a claimant's physical condition should subsequently deteriorate, the proper procedure is to reapply for benefits on the facts as they then exist. Even the most liberal construction of the Social Security Act does not require an award of benefits for past period of time when the claimant failed to satisfy the requirements of disability.

Second, plaintiff would not be considered disabled under the Secretary's new regulations as set forth in 20 C.F.R. § 404.1501 *et seq.* Even though plaintiff's age of 52 at the time of his hearing would place him in the "closely approaching advanced age" category, § 404.1563(c), and his "limited" education and inability to communicate in English, § 404.1564, are added handicaps, he would still not be considered disabled. Here, plaintiff was found not to have a "severe" impairment, one that would "significantly" limit his physical or mental ability to do basic work activities. § 404.1520(c). His past long work experience established his ability to do sedentary work of some skill, and the existence of many alternate types of sedentary entry level jobs for which he was adapted, based upon his residual functional capacity. Tr. 53. That vacancies do not exist or that plaintiff would not be hired are not controlling considerations. § 404.1566. He would still be considered "not disabled," see Subpart P, App. 2, Table 1, Rule 201.11, since his work experience was considered transferable to other types of work. Tr. 53.

Accordingly, the Secretary's determination is affirmed and his motion for judgment on the pleadings dismissing the complaint is granted.

SO ORDERED.