**Domingo ECHEVARRIA,
Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND
HUMAN SERVICES,
Defendant-Appellee.**

**No. 1204, Docket 82–6032.**

United States Court of Appeals,
Second Circuit.

Argued May 17, 1982.

Decided July 7, 1982.

---

Kathleen A. Masters, New York City (Arthur J. Fried, Supervising Atty., Legal Aid Society, New York City, of counsel), for plaintiff-appellant.

Igou M. Allbray, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Miles M. Tepper, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for defendant-appellee.

Before MANSFIELD and MESKILL, Circuit Judges, and PRATT,* Circuit Judge.

MANSFIELD, Circuit Judge:

Domingo Echevarria appeals from a judgment of the United States District Court for the Eastern District of New York, 528 F.Supp. 977, Edward R. Neaher, *Judge*, affirming a determination of the Secretary of Health and Human Services ("Secretary") denying Echevarria's application for Social Security Disability Insurance and Supplemental Security Income ("SSI") under 42 U.S.C. §§ 402, *et seq.* and 1382, *et seq.* The principal issue on appeal is whether the administrative law judge ("ALJ") fulfilled his special obligation to protect the rights of unrepresented claimants by fully uncovering all the relevant facts. Because in our view there was a failure to develop a full and adequate record, we reverse and remand for a new administrative hearing.

Echevarria was born in 1926 in Puerto Rico and has an eighth grade education obtained there. He reads and writes in Spanish but knows very little English. He was born with a congenital foot deformity that was only partially corrected by surgery in 1952. He claims that this condition still prevents him from walking long distances or standing for long periods of time. He also suffers from a congenitally unstable back. From 1963 to October 1976 he worked in a women's handbag factory lining and stapling purses. Beginning around 1971, in addition to the pains associated with his congenital ailments, he began to suffer increasingly from arthritic pains affecting his back, knees, shoulders, ankles and hands, leading to frequent absences from work. His employer apparently accommodated Echevarria's physical problems by assigning him easier work, including tasks that minimized standing, resulting in his job becoming predominantly sedentary.

In October 1976 Echevarria experienced an acute flare-up of active rheumatoid arthritis in his feet and other parts of his body that caused him to leave his job. After receiving treatment he sought to return to work a month later but could not because the factory was closing. For some 39 weeks thereafter he received unemployment compensation while unsuccessfully looking for work.

Echevarria's application for disability and SSI benefits was denied both initially and upon reconsideration. A hearing was then held before ALJ Forsmith on October 13, 1978. Echevarria was unrepresented by counsel but was accompanied by Eduardo Gonzalez, a social services coordinator for the Community Development Agency, who attended the hearing only to testify on Echevarria's behalf but was, after a colloquy with the ALJ, pressed into service as

---

\* When this appeal was heard, Judge Pratt was District Judge for the Eastern District of New York, sitting by designation. He was inducted as a judge of this Court on June 29, 1982.

his representative and did not testify.[1] Echevarria answered the ALJ's questions through an interpreter, but was not questioned by Gonzalez; nor did he call any witnesses.

Echevarria stated that he had difficulty walking and climbing stairs, that he could not bend his knees to squat and was limited to 15–20 pounds. He stated that the pain from his various ailments "bothers [him] a lot" and often left him very tired. He also testified about stomach pains for which he was being treated and for which X-rays had been taken but were not yet available. The ALJ, however, stated that the hearing would proceed without the medical report on his stomach pains since they represent a new condition not included in the original benefits application. Although Echevarria testified that he thought he could perform a sedentary job, which he "would have tried," and that within 5–6 months after the flare-up he probably could have performed his former job, he also pointed to the serious pain he suffered from arthritis, which required his use of strong anti-pain pills, and suggested that at best he could work only if his employer were willing to accommodate his various problems.

After Echevarria testified, the ALJ called the only two witnesses: Dr. Plotz, a medical advisor, and Mrs. Grupsmith, a vocational expert. Dr. Plotz, who had not examined Echevarria, reviewed the reports of the five physicians who had treated him at various times. Of these, only two commented on Echevarria's ability to do work.[2] Dr. Falk, who treated him on a monthly basis from the Fall of 1976 through March 1977, diagnosed mild rheumatoid arthritis, prescribed medication, and stated that Echevarria "may not be able to work until this [arthritic] flare is controlled." Dr. Bryant, in a letter dated August 2, 1978, diagnosed traumatic arthritis and gave a prognosis that "[t]he patient's condition will worsen in due time and may result in his disability."

None of these examining doctors were called to testify or asked to evaluate the reports of the others. Instead, Dr. Plotz, who was reviewing the medical reports for the first time at the hearing, testified as an expert witness that "there are really no medical conditions which would support the diagnosis of disabling arthritis or anything else" and that Echevarria was fully capable of normal walking and of standing on his feet for eight hours a day. Gonzalez questioned Dr. Plotz only briefly, and seemed confused about whether Dr. Plotz or the ALJ would ultimately decide the issue of

1. The relevant portions of the colloquy at the hearing are as follows:

> "ALJ: You were notified in the notice of hearing that was sent to you that you had the right to be represented by an attorney or any other person. Are you represented today?
> CLAIMANT: This gentleman came with me.
> ALJ: Is he going to represent you or is he going to testify?
> CLAIMANT: Just testify.
> MR. GONZALEZ: All depending.
> INTERPRETER: It all depends.
> MR. GONZALEZ: I'm saying that it all depends if (inaudible) wishes me to represent her [sic].
> ALJ: That's what I'm asking. Is that your decision?
> CLAIMANT: Yes.
>
>      *    *    *    *    *    *
>
> ALJ: (To Hearing Assistant "HA") All right. Do you have a statement of representation for the file?
> HA: No, I didn't know. He just said he was going to testify, so I didn't put his statement in."

It is unclear why Gonzalez eventually did not testify. His failure to do so might have stemmed from a mistaken belief on his part that his acting as a representative precluded him from testifying.

2. There were three other treating physicians whose reports were part of the file. Drs. Lipton and Dinhoffer examined Echevarria on February 10, 1978, after an unexplained 11-month break since Dr. Falk's last treatment. Dr. Lipton, a surgeon, reported in part:

> "There is a 50% loss of flexion and extension of the ankles. The feet are pronated. The arches are depressed and rigid. There is moderate atrophy of both calves. X-rays were reviewed. Neurological examination was normal.
> "Impression: (1) low back syndrome, (2) bilateral ankle fusion, (3) rigid pes planus."

Dr. Dinhoffer reported a congenitally unstable back and a congenital variation of the right foot. Dr. Olivera, who saw Echevarria on April 12, 1978, gave a diagnosis of rheumatoid osteoarthritis.

disability. The ALJ also questioned the vocational expert, Mrs. Grupsmith, who, apparently without having examined Echevarria or conducted any tests, presented conclusory testimony based only on her general knowledge of sedentary jobs. Gonzalez, who questioned her only cursorily, focused on the practical difficulties of obtaining work in light of the prevailing unemployment rate, a factor wholly irrelevant to the issue of disability. See 42 U.S.C. § 1382c(a)(3)(B).

In a decision dated November 30, 1978, the ALJ affirmed the denial of benefits on the grounds that Echevarria's impairment was not severe, that he retained capacity to perform sedentary work, and that he could return to his prior relevant occupation. After the Appeals Council declined to review this determination, rendering it final, Echevarria commenced this action in district court which was referred to Magistrate John L. Caden, who issued a report recommending that this action be remanded in light of new regulations since promulgated.[3] 20 C.F.R. §§ 404.1501, et seq. In a Memorandum of Decision and Order dated December 22, 1981, Judge Neaher rejected this recommendation and granted judgment for the Secretary, dismissing Echevarria's complaint.

## DISCUSSION

▇▇ An applicant for disability payments must show that his impairment is of such severity that he cannot perform his previous work or "engage in any other kind of substantial gainful work which exists in the national economy," 42 U.S.C. § 1382c(a)(3)(B). However, in deciding whether the Secretary's conclusions on this issue are supported by substantial evidence, which is the test on review, 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)), we must first satisfy ourselves

that the claimant has had "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Gold v. Secretary of HEW, 463 F.2d 38, 43 (2d Cir. 1972). The need for this inquiry arises from the essentially non-adversarial nature of a benefits proceeding: the Secretary is not represented, and the ALJ, unlike a judge in a trial, must himself affirmatively develop the record. Schauer v. Schweiker, 675 F.2d 55 at 57 (2d Cir. 1982); Gold v. Secretary of HEW, supra, 463 F.2d at 43. Where, as here, the claimant is unrepresented by counsel, the ALJ is under a heightened duty " 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' " Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980) (quoting Gold v. Secretary of HEW, supra, 463 F.2d at 43). A reviewing court must determine whether the ALJ "adequately protect[ed] the rights of [a] pro se litigant by ensuring that all of the relevant facts [are] sufficiently developed and considered." Hankerson, supra, 636 F.2d at 895.

▇▇ Applying these standards, we conclude that Echevarria did not, because of significant "gaps" in the record, receive a "fair and adequate hearing before the Secretary." Hankerson, supra, 636 F.2d at 897. The ALJ failed adequately to explore the nature and extent of Echevarria's subjective symptoms. A claimant's testimony about pain and suffering "is not only probative on the issue of disability, but 'may serve as the basis for establishing disability, even when such pain is unaccompanied by positive clinical findings or other "objective" medical evidence....' " Hankerson, supra, 636 F.2d at 895 (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). Accord, Aubeuf v. Schweiker, 649 F.2d 107, 113 (2d Cir. 1981). Here, despite numerous references in the medical records and testi-

---

**3.** Magistrate Caden noted that Echevarria was in the "closely approaching advanced age" category, 20 C.F.R. § 404.1503, had "limited education," id. § 404.1507, was unable to communicate in English, id. § 404.1506.07, had no vocational training, his work experience was unskilled and limited to sedentary work, id.

§ 404.1510, and there was some question whether his particular work experience—lining and assembling women's pocketbooks—was transferable. The Magistrate concluded that these factors, when considered in light of the pessimistic medical reports, required a remand for re-evaluation.

mony by Echevarria concerning his subjective symptoms of serious pain, the ALJ did not fully inquire into what specifically caused Echevarria to leave his job or the full degree of the pain and the extent to which it prevents him from working. In addition, the ALJ, knowing Gonzalez initially intended only to testify, did not seek corroboration from him about Echevarria's subjective symptoms; had Echevarria been represented by counsel, this is a subject "[a]ny lawyer prepared for a hearing ... would realize ... most required supporting testimony." *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981). Finally, rather than summarily dismissing as irrelevant Echevarria's testimony about his stomach pains, a more diligent inquiry would have revealed that these pains were the adverse effects of the drug (Motrin) prescribed for the arthritis, and thus were directly related to Echevarria's attempts to control the arthritis that initially forced him to leave his job.

Moreover, as in *Hankerson*, the proper course would have been to direct Echevarria to obtain a more detailed statement from the treating physicians, Dr. Falk and Dr. Bryant, before rejecting their pessimistic prognosis about his ability to work. Of the five treating physicians' reports, only two commented on the issue of disability: Dr. Falk stated that Echevarria "may be unable to work until this flare is controlled," and Dr. Bryant reported that the "traumatic arthritis ... will worsen in due time and may result in his disability." While these findings are not conclusive, the duty to protect the rights of pro se claimants by developing "all the relevant facts" calls for much more than a reliance on the contrary conclusions of a non-treating medical advisor. As we stated in *Hankerson, supra*:

> "Before the ALJ can reject an opinion of a pro se claimant's treating physician because it is conclusory, basic principles of fairness require that he inform the claimant of his proposed action and give him an opportunity to obtain a more detailed statement." 636 F.2d at 896.

This was not done here. "[I]n the absence of substantial contradictory evidence, the opinion of the claimant's treating physician is binding on the Secretary." *Id.* See also *McLaughlin v. Secretary of HEW*, 612 F.2d 701, 705 (2d Cir. 1980) (contrary views of medical advisor entitled to less weight unless substantial evidence contradicts treating physician's conclusion); *Strickland v. Harris*, 615 F.2d 1103, 1109 (5th Cir. 1980) (report of non-examining physician alone does not constitute substantial evidence). Moreover, for reasons already indicated, the ALJ should have requested medical reports concerning Echevarria's stomach problems, since they are highly relevant to Dr. Falk's prognosis that Echevarria's ability to work turns on the effectiveness of treatment.

An inquiry also should have been conducted into whether Echevarria's former employment was made possible only by special accommodation on the part of his employer that would not be matched by potential future employers. The record fails to disclose the reasons for Echevarria's increasingly frequent work absences and his having been given easier tasks as his ailments became more serious. Indeed, the record does not reveal what specific tasks Echevarria could and did perform for his former employer, or what tasks he was forced to abandon as his arthritis became more severe. This "gap" in the record makes it impossible to evaluate the vocational expert's conclusory testimony that Echevarria is able to perform sedentary jobs.

Mr. Gonzalez' nominal representation of Echevarria did not suspend the ALJ's special duty to pro se claimants. Gonzalez intended only to testify and not to act as a representative, see note 1, *supra*, which indicated that if Echevarria had been adequately advised of the advantages of having experienced Legal Aid counsel, as he now has on this appeal, he would have so chosen. Moreover, in light of the confused colloquy the ALJ was under a duty not simply to inquire if Echevarria consented at that moment to Gonzalez' representation, but also whether Gonzalez was *prepared to*

act as a representative. There is no evidence that Gonzalez had studied the file or had any prior experience with disability claims. Furthermore, although Gonzalez tried, he was incapable of providing effective representation due to his apparent unfamiliarity with the disability claims procedure and criteria. In questioning Dr. Plotz he was confused about whether the medical advisor or the ALJ ultimately decided the disability issue, and his questioning of the vocational expert and his closing remarks represent a well-intended but rambling plea, emphasizing Echevarria's good character and the difficulties of finding employment, but never addressing the only relevant issue: his claim to being legally disabled. It can hardly be doubted that Gonzalez did not and could not provide the type of assistance that a lawyer or a prepared representative would have provided. *Clark v. Schweiker, supra,* 652 F.2d at 406; *Hankerson v. Harris, supra,* 636 F.2d at 897.

Therefore, notwithstanding Gonzalez' nominal representation, the ALJ was under a special duty to protect Echevarria's rights by ensuring that the hearing be "fair and adequate." While none of the errors standing alone is sufficient to upset the Secretary's determination, their total effect deprived Echevarria of a full consideration of his claim.[4] *Hankerson, supra,* 636 F.2d at 987. Accordingly, we vacate the judgment of the district court with instructions to remand the matter to the Secretary for further appropriate proceedings.

MESKILL, Circuit Judge (dissenting):

I agree with the majority that in deciding whether the Secretary's decision is supported by substantial evidence, "we must first satisfy ourselves that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the be-

neficent purposes of the Act.'" Maj. op. at 755. Because I believe that Echevarria received a "full hearing," I respectfully dissent from the result reached by the majority.

The majority acknowledges that the ALJ asked Echevarria whether any symptoms would prevent him from working, and about his prior work history and his ability to perform basic work functions and to function in daily life. Further, the record indicates that in addition to hearing the testimony of Echevarria, the ALJ requested and heard testimony of Dr. Plotz, who, as the district court found, was an authority on rheumatism and arthritis, and of Eleanor Grupsmith, an experienced vocational expert. The ALJ also reviewed Echevarria's extensive medical file which contained opinions from five other doctors. Despite this thorough performance by the ALJ, the majority concludes that the ALJ should have asked Echevarria more probing questions and should have directed Echevarria to obtain a "more detailed" medical statement from his treating physician. I think that in almost every case we can formulate questions that we would have liked the ALJ to ask or can think of further actions that the ALJ might have taken. I believe that many of the questions which the majority formulates were indeed asked by the ALJ and that the questions which were not asked would not have affected the ALJ's decision.

The majority first contends that the ALJ failed adequately to explore Echevarria's subjective symptoms, especially his claims of pain. Contrary to the majority's assertion, the ALJ asked Echevarria where he experienced pain and the severity of that pain:

Q Do you feel pain in your joints or do you feel the pain in the muscle?

---

4. This disposition obviates the need to reach Echevarria's claim that the ALJ wrongfully combined what should be two separate inquiries: the severity of the impairment, a physical inquiry, and the ability to pursue gainful activity, a vocational inquiry. See *Berry v. Schweiker,* 675 F.2d 464 at 466 (2d Cir. 1982). In addition, since we hold that a remand is required under the standards announced in *Hank-*

*erson v. Harris,* 636 F.2d 893 (2d Cir. 1980), we do not need to decide whether Echevarria was accorded adequate notice of his right to counsel and the possibility of free legal assistance, and if not, whether an even higher duty would thereby be placed upon the ALJ. See *Clark v. Schweiker,* 652 F.2d 399 (5th Cir. 1981).

A  In the joints.

Q  No pains in the muscles?

A  No.

Q  No pain traveling?

A  No.

Q  What did the doctor tell you?

A  When I go the doctor will give me pills for the pain.

Q  What are the pills?

A  Motran [sic] 400.

Q  That's it?

A  Yes, that's the pills.

Q  How often do you take it?

A  When I get the medication or I get the perscription [sic] it says I should take three a day or maybe one a day as needed.

Q  Much pain?

A  The pain bothers me a lot.

J.App. at 41–42. I fail to see what further relevant questions the ALJ should have asked. Furthermore, I am unable to comprehend how a more searching inquiry, including corroboration from Gonzalez, would have affected the ALJ's determination. In rendering his decision, the ALJ concluded that because Echevarria portrayed no observable signs of pain, what pain he experienced did not prevent him from working.[1] It was, of course, within the ALJ's discretion to discount Echevarria's testimony of pain and to rely instead on his own observations. *See Miles v. Harris,* 645 F.2d 122, 124 (2d Cir. 1981); *Vega v. Harris,* 636 F.2d 900, 904 (2d Cir. 1981); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979). Further inquiry into Echevarria's subjective symptoms would have had little impact on a determination based upon the absence of observable manifestations of pain. In addition, I find no record support for the majority's contention that "a more diligent inquiry [concerning Echevarria's stomach pains] would have revealed that these pains were the adverse effects of the drug (Motrin) prescribed for the arthritis." Maj. op. at 756. Even were there support for this statement, I question how the adverse effects of a drug, the dosage of which can be altered or a substitute for which can be prescribed, could possibly be a basis for a disability finding.

The majority next asserts that the ALJ should have directed Echevarria to obtain a more detailed statement from his treating physicians rather than rely upon "the contrary conclusions of a non-treating medical advisor." Maj. op. at 756. Unlike the majority, I do not find Dr. Plotz's conclusions to be contrary to those of Drs. Falk and Bryant. Neither Dr. Bryant nor Dr. Falk stated that Echevarria was disabled or unable to work. Dr. Falk stated only that Echevarria "*may* be unable to work until this flare is controlled," J.App. at 92 (emphasis added), and Dr. Bryant noted only that Echevarria's condition "will worsen in due time and *may* result in his disability," *id.* at 118 (emphasis added). If anything, Dr. Plotz's observations would merely have indicated that Echevarria's "flare" had been controlled. This finding is consistent with Echevarria's own testimony that five or six months after his sudden attack of arthritis he was well enough and in fact is still well enough to work at his former job. J.App. at 34, 38. Furthermore, Dr. Plotz's observations would only indicate that Echevarria's condition had not deteriorated to the point where he was disabled or that the Motrin had been effective in combating Echevarria's arthritis. The ALJ did not reject the opinion of Echevarria's treating physicians nor were Dr. Plotz's findings inconsistent with those opinions. In short, unlike in *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir. 1980), where the ALJ rejected the opinion of plaintiff's treating physician, I do not believe that the ALJ here was required to "inform the claimant of his

---

1. In his decision the ALJ stated:

    I am not overlooking the claimant's allegations of pain and discomfort, since they may be an important factor in causing functional loss. However, when pain is unresponsive to therapeutic measures, it will, in the course of time, result in observable signs. No such manifestations have been reported which would establish that the claimant's pain prevents him from performing substantial gainful activity.

    J.App. at 12.

proposed action and give him an opportunity to obtain a more detailed statement [from his treating physician]."

The majority next opines that the ALJ should have inquired as to whether Echevarria's former employment was made possible only through special accommodation by his employer. The majority also asserts that the record does not reveal what tasks Echevarria could perform. Contrary to these contentions, the ALJ specifically asked Echevarria what tasks he performed at his former employment and whether there were other handbag factories where Echevarria could perform the same tasks:

Q What did you have to do on your last job?

A Most of the time I would be working with the stapling machine or putting the lining in the purse. All this was done sitting down.

. . . .

Q You were in a handbag factory, and it was your job to put the linings in the bags, did you say?

A Most of the time that was my duty because I was the best one—I was the one that did it the best.

Q And you used the stapling machine?

A Yes.

Q And what else did you do in the handbag factory?

A Folding the purses with the hand folder.

. . . .

Q Did you use other machinery?

A No, because the other machines you had to be standing.

Q Did you spend most of your time sitting in this job?

A Yes, most of the time.

Q If your job were available to you now, do you think you could do it? Your old job.

A Yes, I think so.

Q Are there any other places that do this kind of work here in the city to make handbags where you could do the same kind of work?

A Yes, I imagine so because most all purses are done with the same procedures.

J.App. at 37–39. Echevarria's testimony is clear that he worked with the stapling machine, put linings in the purses and folded the purses with a hand folder, all of which could be performed at other handbag factories. Further, contrary to the majority's contention, Echevarria indicated that he could perform these tasks provided that he could do so in a sitting position. *See also* J.App. at 36. In sum, unlike the majority, I perceive no "gap" in the record that "makes it impossible to evaluate the vocational expert's . . . testimony that Echevarria is able to perform sedentary jobs." Maj. op. at 756.

Finally, the majority asserts that Gonzalez intended only to testify, not to act as Echevarria's representative. Accordingly, the majority implies that the ALJ should have apprised Echevarria of the advantage of counsel. I disagree. Although the colloquy between the ALJ, Echevarria and Gonzalez was somewhat confused, the fee discussion[2] as well as Gonzalez's closing remarks[3] indicate to me that he intended all

---

**2.** In its citation to the record, Maj. op. at 754 n. 1, the majority omits the following discussion which I believe clearly indicates that Gonzalez, an experienced Social Service Coordinator for the Community Development Agency, intended from the beginning to act as Echevarria's representative:

HA [Hearing Assistant]: No. Just one more thing, he's not requesting a fee is he?
ALJ: Are you—this is a concurrent case, are you requesting [a] fee?
MR. GONZALEZ: No, this is a free offer. No fee or anything—volunteer work.
J.App. at 24.

**3.** Gonzalez stated the following:

MR. GONZALEZ: I believe that the honest and (inaudible) party that we're dealing with is a very honest person. I'm trying to help him along. We're a month behind trying to get him into (inaudible). I know you spoke about CETA. I have the job in the Manpower Center, I was one of the guys in the CETA training program myself. I tried to put him in a lot of things. I have been trying to help him out to bring him to welfare to see if we could get some supplementary during the time he was in bad shape (inaudible) and he still needs some kind of help.

along to act as Echevarria's representative. Moreover, contrary to the majority's assertion, the ALJ apprised Echevarria of his right to be represented. J.App. at 22–23. Also, the notice of hearing which Echevarria received informed him of his right to free legal representation. J.App. at 16. I do not believe that the ALJ was required to assess Gonzalez's competence or to reiterate to Echevarria that he had a right to free legal representation. *See Garcia v. Califano*, 625 F.2d 354, 356 (10th Cir. 1980).

Accordingly, because I believe that Echevarria received a full and fair hearing and that the Secretary's decision denying him supplemental security income and disability benefits was supported by substantial evidence, I would affirm the judgment of Judge Neaher below.

I don't think the man is very interested in living the rest of his life on disability or whatever. I think quite honestly he's the type of guy that would like to go and fill a position. Unfortunately, I don't believe right now there is any type of job open or training unless the legislators or the government in the near future express themselves to do something better.

But just taking this in consideration, from now until the future that's what I'm interested in. What can happen? What is the resolution—what kind of result of a party like this who is willing and wants to but can't find it.

J.App. at 58.