Maria D. BARRERA, Petitioner,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Respondent.

No. 93–CV–1501 (JS).

United States District Court,
E.D. New York.

Jan. 6, 1995.

Wendy Brill, New York City, for petitioner.

U.S. Attorney's Office, E.D. of N.Y. by Michelle T. Weiner, Asst. U.S. Atty., Brooklyn, NY, for respondent.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

Petitioner Maria D. Barrera brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) challenging a final determination of the Secretary of the Department of Health and Human Services [the "Secretary"], which denied her application for Supplemental Security Income benefits under the Social Security Act [the "Act"]. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure; in addition, the petitioner seeks, in the alternative, to have her application remanded to the Secretary for further administrative proceedings. For the reasons that follow, the Court remands this matter to the Secretary for further consideration of the petitioner's claim.

## BACKGROUND

Petitioner is a sixty-one year old female who was born in Spain, and immigrated to the United States in 1965. On December 31, 1990, petitioner and her husband, Stanley Barrera, filed a joint application for Supplemental Security Income benefits, indicating a protective filing date of November 20, 1990. In this application, petitioner asserted that she became disabled in July 1990 on account of muscular discomfort in her back, that made it difficult for her to walk. Tr. at 61. This application was denied by the Secretary, both initially, and upon request for reconsideration. Upon a hearing held before an Administrative Law Judge [ALJ] on November 22, 1991, petitioner's claim was again rejected, by decision dated April 24, 1992. Petitioner's request for review of this decision was then denied by the Appeals Council on January 27, 1993.[1]

At her hearing before the ALJ, petitioner was represented by her husband, who also served as her interpreter. Petitioner testified that although she was educated in Spain, she is able to read, write, and speak English to a degree. She further testified that, in 1984, she assumed ownership of her husband's real estate brokerage business upon her husband's retirement, to enable him to collect social security retirement benefits. Tr. at 36. At this time, petitioner had never worked before, and did not have a real estate license. At no time during her ownership of this business did petitioner obtain a real estate license; rather, she had three employees who performed all selling duties, while she took care of the office. As owner, petitioner answered the telephone, wrote real estate listings, accompanied her salespersons to apartments and homes, made bank deposits, maintained files, served as a translator for Spanish-speaking clients, and assigned salespersons to the clients. She also stated that, as owner, it was necessary for her to lift a metal gate in the store front up and down, and to shovel snow in the winter. It was also necessary for her to kneel in connection with filing records, and to walk (i) to and from work, (ii) to the bank to deposit receipts, and (iii) in accompanying salespersons to premises (although she left the selling duties to the salespersons). She stated that she closed the business in 1989 because she felt too tired to continue working, as a result of leg and back pains. Specifically, petitioner claimed that her knees ache after walking for one or two blocks, and that her back hurts after standing for more than fifteen minutes, or sitting for a length of time. At the time of the hearing, however, petitioner had not undergone any regular medical treatment for these ailments, allegedly due to a lack of

---

1. This case was originally filed in the Eastern District of New York, under docket number 92–CV–2352, before petitioner submitted her request for review to the Appeals Council. Thereafter, the parties stipulated to a dismissal of the action without prejudice to allow petitioner to exhaust her administrative remedies. Upon the Appeals Council's denial of petitioner' request for review, petitioner's court case was reinstated under docket number 93–CV–1501.

funds. She further stated that her physical ailments did not interfere with her ability to think or to plan.

Petitioner stated that she takes Mevacor to lower her cholesterol, Fiorinal for her migraine headaches, Motrin for her tendinitis and back pain, and also takes hot baths to relieve her pain.

Petitioner testified that she is being treated by a Dr. Kennish, whom she saw one month prior to the hearing. Dr. Kennish referred petitioner to a neurologist, but petitioner allegedly lacked the funds for a consultation.

Petitioner stated that she was informed that she had tendinitis, and was treated with Novocaine at Jackson Heights Hospital. Petitioner also testified that she received emergency-room treatment at Physicians Hospital, which has since closed. Petitioner further stated that, three years prior to the hearing, she was treated by a Dr. Perello, who also injected her with Novocaine to relieve her back pain.

The record contains reports of three separate treating and consulting physicians. The first two are reports by Dr. K. Seo, who performed a consultative examination of the petitioner on February 14, 1991, and Dr. Arthur J. Kennish, whom the claimant testified she saw twice, but who reported that he only saw her once, on July 16, 1991. Both reports assert that the petitioner displayed symptoms of lumbar radiculopathy, and complained of difficulty in walking. Dr. Seo noted restricted lumbar motion, negative x-ray findings and a decreased sensation of the right leg at the level of L5, and Dr. Kennish noted decreased lower extremity reflexes. However, neither physician noted any muscle spasm, motor loss, or objective muscle weakness. Dr. Seo concluded that functionally, claimant may have difficulty standing and walking for prolonged periods, and Dr. Kennish indicated that the claimant had an "inability to sustain physical activity, walking, etc." Tr. at 121. Dr. Kennish was subsequently requested by the ALJ to complete a detailed medical assessment form describing claimant's ability to do work-related activities, but returned it to the ALJ with only a copy of his previous report, which was completed on a form prescribed for assessing an individual's mental residual functional capacity. In addition, it should be noted that Dr. Kennish is not an orthopedist, but an internist specializing in cardiology; he referred the claimant to a neurologist, but petitioner testified that she did not go because of a lack of funds.[2]

Noting Mrs. Barrera's testimony that she did not participate in selling real estate, the ALJ found, in his decision, that the claimant functioned as a real estate office manager, which he regarded as a sedentary occupation. He further found that the claimant possessed "the residual functional capacity to perform work-related activities except for work involving prolonged standing or walking, or other strenuous exertion," and that petitioner's past work as a real estate office manager did not require the performance of work-related activities precluded by these limitations. He therefore concluded that the claimant's impairment did not prevent her from performing her past relevant work, and that, consequently, the claimant was not under a "disability" as defined in the Act, at any time through the date of his decision. Thus, the ALJ denied petitioner's claim for supplemental security income. Tr. at 13–14.

The litigants raise two issues in their cross-motions. First, the petitioner asserts that the ALJ did not inform her of the benefits of exercising her right to counsel, and that the same prejudiced her because the ALJ failed properly to develop the record. With respect to this matter, the petitioner has attached to her motion papers new medical evidence, including a residual functional capacity evaluation form completed by a neurologist, that diagnoses the petitioner as suffering from severe neuritis, which renders it "impossible for her to work." She argues that had the ALJ ordered a neurological examination of the claimant, this diagnosis would have been available to him in com-

---

2. The record also contains a report of Dr. Vasile, a treating physician, dated February 8, 1984. Dr. Vasile diagnosed the petitioner as suffering from arthritis, a cervical and lumbar spine, right cervical plexitis, and an upper respiratory infection. He prescribed Motrin, and advised the petitioner to see a rheumatologist.

pleting the record. Second, petitioner asserts that the ALJ's determination that the petitioner was not under a disability is unsupported by substantial evidence. Further to this point, petitioner claims that the ALJ improperly classified her past work, and failed to develop and consider evidence of the petitioner's pain.

### DISCUSSION

■ An individual's eligibility for benefits under the Supplemental Security Income program [SSI] is conditioned upon the claimant's compliance with certain statutory requirements. First, the claimant must meet the income and resource requirements set forth in 42 U.S.C. §§ 1382a and 1382b. *See* 42 U.S.C. § 1382(a). Second, the claimant must demonstrate that:

> [She] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.…

42 U.S.C. § 1382c(a)(3)(A). Further, the claimant must have a "physical or mental impairment … of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.…" 42 U.S.C. § 1382c(a)(3)(B).

■ Under 42 U.S.C. § 405(g), a Court's review of the Secretary's factual findings is limited to determining whether such findings are supported by substantial evidence within the administrative record. A finding supported by substantial evidence will be deemed conclusive. *See* 42 U.S.C. § 405(g). In the context of social security cases, the Supreme Court has noted that the phrase "substantial evidence" requires "more than a mere scintilla;" rather, it means such evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ In order for the foregoing scope of review to be triggered, however, a reviewing court "must be satisfied that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.'" *Robinson v. Secretary of Health and Human Servs.*, 733 F.2d 255, 257 (2d Cir.1984) (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)). "The claimant is entitled to be represented by counsel at the hearing and the ALJ must ensure that the claimant is aware of this right." *Id.* (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir.1975)). "When a claimant is unrepresented, the ALJ has a duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts,' and the reviewing court must make a 'searching investigation' of the record to ensure that the claimant's rights were protected." *Id.* at 258 (quoting *Cutler*, 516 F.2d at 1286; *Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir.1972)). Further, the ALJ's fiduciary obligation to develop the record is not diminished where, as in the instant case, the claimant is nominally represented by an individual—in this case, Mrs. Barrera's husband—who is inexperienced with disability claims, and who demonstrates a lack of understanding of the techniques for introducing evidence to support a claimant's case. *See Echevarria v. Secretary of Health and Human Servs.*, 685 F.2d 751, 756–57 (2d Cir.1982).

Applying these standards, the Court concludes that Mrs. Barrera, because of significant "gaps" in the record, did not receive an "adequate hearing before the Secretary." *Id.* at 755 (internal quotation omitted). Although the Court finds that the claimant was adequately informed of her right to counsel, *see* Tr. at 20; *see also* Tr. at 17 (notice of hearing describing, *inter alia,* right to be represented), the record reveals a number of items that should have been explored further by the ALJ, which if fully developed, reasonably could have affected the ALJ's benefits determination. First, the record is unclear as to what efforts the ALJ made to obtain records pertaining to the claimant's outpa-

tient visits to Physicians Hospital. The record merely contains a correspondence on the letterhead of Comprehensive Archives Incorporated, which states that the Closed Hospital Department does not have any medical record, generated by Physicians Hospital, pertaining to "Maria Barera of Ronda." Tr. at 140. Given that the claimant's name is misspelled in this letter, the Court is unable to ascertain whether records were checked using the correct spelling of her name. Second, the record reveals that Dr. Kennish, the claimant's treating physician, in reporting to the Secretary, completed diagnostic forms designed for use in performing a mental evaluation, as opposed to a physical evaluation. When the ALJ attempted to remedy this by providing the appropriate forms to Dr. Kennish for his preparation, the physician simply returned these forms uncompleted, accompanied by a photocopy of his previously submitted paperwork. Tr. at 124–36. By so doing, the physician failed to address the specific assessments requested concerning the claimant's ability to continue working. This information should have been followed-up by the ALJ because it reasonably could have been material to his assessment of Mrs. Barrera's claim. Third, the ALJ, knowing that the claimant's husband initially intended to testify, nevertheless failed to obtain corroboration from him regarding the claimant's subjective symptoms of pain. This area, likewise, should have been explored further at the administrative hearing. *See Echevarria,* 685 F.2d at 755–56.

Finally, the materiality of the foregoing gaps in the record is suggested, in part, by a physician's report appended to petitioner's cross-motion before the Court. This report, completed by a Dr. Milton E. Eisen, diagnoses a severe neuritis affecting petitioner's neck and lower back and radiating down the right leg, and causing "unremitting pain, even when sitting," and making "it impossible for her to work." The report indicates an inability for the petitioner to sit, stand or walk in a work setting. The report also states that "marked change in temperature and humidity can cause increase in degree of pain" and that "intense chronic pain, imposes limitation on most, if not all, activities."

■ Under the Social Security Act, a court may order the Secretary to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Thus, the petitioner must show that the proffered new medical evidence is "(1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier." *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988) (internal citations omitted); *see Jones v. Sullivan,* 949 F.2d 57, 60 (2d Cir.1991) (quoting *Tirado* ).

The Court finds the tripartite standard for the consideration of Dr. Eisen's report to have been satisfied. In addition to the novelty and materiality of the physician's assessment, the Court finds the good-cause requirement to have been met through the petitioner's claim at the administrative hearing that she lacked sufficient funds to obtain a neurological examination. Tr. at 43. Accordingly, the Court shall remand this matter to the Secretary for further development of the record, and to consider this new medical evidence in making its benefits determination.

## CONCLUSION

In accordance with the foregoing analysis, this matter is remanded to the Secretary for further appropriate proceedings.

SO ORDERED.