John N. FONTENOT

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

Civ. A. No. 19224.

United States District Court,
W. D. Louisiana,
Opelousas Division.

Dec. 5, 1975.

Preston N. Aucoin, Ville Platte, La., for plaintiff.

Donald E. Walter, U. S. Atty., Leven H. Harris, Asst. U. S. Atty., Shreveport, La., for defendant.

NAUMAN S. SCOTT, District Judge.

RULING

The plaintiff, John N. Fontenot, has brought this action pursuant to Section

205(g) of the Social Security Act, 42 U. S.C. § 405(g), to review a denial of benefits by the Secretary of Health, Education and Welfare. The defendant has filed a motion for summary judgment. Plaintiff's petition asserts that the record fails to provide the standard of evidence necessary to support the Secretary's decision that plaintiff is no longer entitled to disability insurance benefits.

 Plaintiff filed an application for establishment of a period of disability and for disability insurance benefits in April of 1970, alleging disability as of November 1968. This application was approved and plaintiff began receiving disability benefits. Because of the possibility of improvement in plaintiff's condition, the Social Security Administration scheduled periodic re-evaluations. Following one such re-evaluation, it was determined that plaintiff's condition had improved and his benefits were ceased after September 1972. This decision was appealed by plaintiff through the Administrative process and a hearing before an Administrative Law Judge was held in June 1973. The Administrative Law Judge found the cessation of benefits to have been correct, and the Appeals Council affirmed his decision. Plaintiff then brought suit in this court. On February 23, 1974 this court remanded the case to the Secretary for further administrative action. A second hearing before a different Administrative Law Judge was held in July 1974, which again resulted in an opinion that cessation of benefits was correct. This decision was affirmed by the Appeals Council, and thus became the final decision of the Secretary, reviewable here. The sole issue is whether the decision by the Secretary that plaintiff's condition had improved warranted cessation of benefits is supported by substantial evidence.

 It is well settled that this court does not try the case de novo, reweigh the evidence, nor substitute our judgment for that of the Secretary. *Goodman v. Richardson,* 448 F.2d 388 (5th Cir. 1970). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 889, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Hemphill v. Weinberger,* 483 F.2d 1137 (5th Cir. 1973). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as being adequate to support a decision. *Hemphill v. Weinberger, supra; Payne v. Weinberger,* 480 F.2d 1006 (5th Cir. 1973).

 While the standards for review in the courts of denial or cessation of disability benefits is very narrow, this does not mean that the courts have abdicated their traditional function of scrutinizing the record as a whole to determine the reasonableness of the decision reached. 42 U.S.C. § 405(g), 423(d)(2)(A), (d)(5); *Lewis v. Weinberger,* 515 F.2d 584 (5th Cir. 1975). The decision of the Agency whose duty it is to administer the Act is entitled to great weight; nevertheless the decision must be based upon the proper legal standard of "substantial evidence". The court has the duty to ascertain whether the evidence in the record meets that standard.

Since the Secretary recognized plaintiff's disability, we need not discuss the evidence relating to the establishment of that disability. Our only concern today is with the later evidence introduced to show that plaintiff's condition has improved to the degree that he is no longer disabled within the meaning of the Act. Briefly summarized, the Act requires that for a person to be under a disability, it must be shown that he has a mental or physical infirmity, medically demonstrable with laboratory or clinical evidence, which prevents him from engaging in substantial gainful activity, and which can be expected to result in death or to last for a continuous period of at least twelve months, 42 U.S.C. § 416(i).

The original granting of benefits was based on a finding that plaintiff was disabled because of a back injury, consisting of a large degenerative central disc and possible lumbar sprain. At the original hearing on the cessation issue, the evidence relating to plaintiff's "improved" status consisted of two medical reports.

Dr. Jerome Ambrister (an Orthopedic Surgeon) saw plaintiff in September 1972 at the request of the Secretary. His report includes a case history and a summary of a physical examination. The diagnosis at this time was of a minimal narrowing of L–4–5 and L–5–S–1 intervertebral disc spaces with hypertrophic lipping and spurring of the anterior contiguous margins of the 10th and 11th dorsal vertebral bodies anteriorly. In Dr. Ambrister's opinion, the symptoms, some four years post-injury, were referable only to the back. There was no indication of acute discomfort nor of sciatic nerve root irritation. According to this physician, plaintiff could return to any type of employment.

Dr. John Tassin, Jr. (a General Practitioner) saw plaintiff in September 1972. His report concluded that plaintiff "has some findings of a lumbar disc" but in his opinion, plaintiff was disabled and could not do any heavy work.

At the hearing after remand, the new evidence consisted of the testimony of a physician, Dr. Davidson Texada, and of a vocational expert, Dr. Ronald S. Pryer, and reports from Drs. Ray J. Beurlot, Jr. and Ramson K. Vidrine.

Dr. Beurlot (an Orthopedic Surgeon) diagnosed probable degenerative disc with herniation, and felt plaintiff could not perform heavy manual labor, but could perform some of the more sedentary types of jobs. Dr. Ramson Vidrine (a General Surgeon) reported that plaintiff had a ruptured intervertebral disc. This report indicates no opinion as to plaintiff's ability to work.

Dr. Davidson Texada (Psychiatrist and Neurologist) testified at the second hearing that plaintiff had a herniated disc. That type of damage, Dr. Texada testified, does not normally produce nerve root pain or sciatic nerve pressure, but does produce muscle spasm and pressure on the spinal cord. This causes intermittent bouts of pain. Surgery was indicated, but even after surgery of this type, most people are unable to return to heavy work. Plaintiff would have trouble lifting more than ten pounds, bending, sitting or standing in one position for any length of time. Plaintiff had previously noted his fear of surgery of this kind, and Dr. Texada testified that plaintiff's fear was justified, because of the risk of failure and of the residual problems remaining after a "successful" operation.

Dr. Ronald S. Pryer, Ph.D., (Vocational Expert) testified that, given plaintiff's medical condition, he could hold only the most restrictive of jobs. Plaintiff could, for example, polish golf clubs or manufacture fishing lures or duck calls. These jobs exist in very limited numbers (about 200 in the entire state). On questioning, the expert testified that even these jobs would be difficult for plaintiff and that if plaintiff told his prospective employers about his condition, he would most likely not be hired. Plaintiff would probably be hired for one of these jobs if "he didn't let anybody know that he had a back injury".

This extensive discussion of the evidence has been dictated by the nature of this case. As noted above, our function on review is not to reweigh the evidence or to try the case de novo. We must determine only whether the decision of the Secretary is supported by substantial evidence. However, we must determine whether the evidence in the case meets the legal standards of "substantial evidence".

After once having determined that plaintiff was disabled, the Secretary later determined that the disabling condition had improved. This decision was based upon the testimony of one

doctor who found improvement, but in the face of several doctors who found plaintiff's condition substantially the same. The vocational testimony that, if plaintiff lied about his condition, he could possibly be hired for one of 200 jobs in the state manufacturing golf clubs, duck calls or fishing lures, simply is not convincing testimony that jobs exist in the economy which plaintiff could perform, given his physical condition. Thus, we do not find the evidence that plaintiff's condition has improved to a point such that he is no longer disabled to be such relevant evidence as a reasonable mind might accept as being adequate to support the decision. A reasonable mind simply would have to reject the one doctor's findings of improvement, made in the face of overwhelming evidence of no improvement, as well as the testimony of the vocational expert.

The Secretary further argues that plaintiff's refusal to undergo surgery is a sufficient basis for ceasing his benefits. 20 C.F.R. 404.1507 provides that a plaintiff's willful and unreasonable refusal to undergo surgery will not constitute a basis for the award of disability insurance benefits. The testimony of Dr. Texada shows clearly that plaintiff's refusal was not unreasonable. The doctor noted that, because of the high degree of risk involved, the chance of failure and the possible residual problems which often limits the success of a "successful" laminectomy, he himself recommends this surgery be performed only when the patient can no longer stand the pain. I "don't just recommend surgery for a disc just because it's there". The refusal in this case is certainly reasonable, and, therefore, 20 C.F.R. 404.1507 is not applicable.

In view of the foregoing, plaintiff's motion for summary judgment is granted, and the motion for summary judgment by the defendant is denied. An appropriate judgment should be submitted to the court for execution.