**Evelyn McDANIEL, Plaintiff,**

v.

**Margaret HECKLER, etc., Defendant.**

**Civ. A. No. 84V–815–N.**

United States District Court, M.D. Alabama, N.D.

May 8, 1985.

William R. Blanchard, Pappanastos, Samford, Roberts & Blanchard, Montgomery, Ala., for plaintiff.

Kenneth Vines, Asst. U.S. Atty., Montgomery, Ala., for defendant.

## OPINION

VARNER, District Judge.

This cause is presented for review of the findings of Defendant Secretary that Plaintiff was not disabled permanently from a period allegedly beginning on January 29, 1982. Plaintiff duly filed a claim and processed the same through a hearing before an Administrative Law Judge (ALJ)

who denied benefits and found the Plaintiff not disabled on August 31, 1982, [Tr. 285–293]. Plaintiff did not request review by the Appeals Council or otherwise proceed in regard to that claim, and the finding of the ALJ on August 31, 1982, is conclusive as to Plaintiff's nondisability from January through August of 1982. This Court has no jurisdiction to review the action of Defendant Secretary not timely presented for review. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Ellis v. Schweiker*, 662 F.2d 419 (5th Cir.1981).

Plaintiff filed her current application for disability insurance benefits on March 2, 1983. Plaintiff exhausted her administrative remedies, and this Court will review the decision of the ALJ and hence Defendant Secretary for the period of alleged disability beginning on August 31, 1982.

Plaintiff is a 54-year-old female with a seventh-grade education [Tr. 296, 308]. Her vocational history shows that she had a successful work record for some 28 years [Tr. 61] and that her principal job has been that of a sewing machine operator in the textile industry. Plaintiff claims a disability due to degenerative osteo-arthritis, residuals of a lumbar laminectomy, congestive heart failure and chronic intractable pain [Tr. 414].

■ The burden of proof in cases of this sort is on the Plaintiff to prove by a preponderance of the evidence her disability as defined in the Social Security Act as "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death and which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d). Title 42, U.S.C., § 423(d)(2)(A), provides that one is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." Section 423(d)(3) states that "for purposes of this section, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

■ The standard for judicial review of a decision by an ALJ and Appeals Council of denial of disability is that substantial evidence must support the finding. *Jackson v. Richardson*, 449 F.2d 1326 (5th Cir. 1971). Substantial evidence is "more than a scintilla, less than a preponderance and such relevant evidence as a reasonable mind might accept as being adequate to support the decision." *Fontenot v. Secretary of HEW*, 404 F.Supp. 166 (D.C.La. 1975).

The Plaintiff complains that the ALJ and hence the Secretary gave little weight to the treating physician's expert opinion in violation of the mandates of *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir.1974); *Roberts v. Schweiker*, 667 F.2d 1143 (4th Cir.1981); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir.1982). The problem that the ALJ had with the treating physician's (Dr. Thomas) expert opinion was the weakness of any showing of an anatomical, physiological, psychological abnormality which is demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). Plaintiff's counsel points out that severe disabling pain coupled with medically determinable impairments demand credibility findings not shown in this proceeding. The ALJ's problem, again, was a failure of a showing of medically determinable impairments. Plaintiff was able to show a mild scoliosis and mild osteo-arthritic changes of her lumbar sacral spine and residual pantopaque from a previous myelography [Tr. 409, 413]. Unfortunately, Plaintiff's burden of proof relative to her back problem is complicated by the fact that she is unable to have proper diagnostic myelograms made

because of her allergy to the dye which would be inserted in the spinal column for purposes of the myelogram. Such dye apparently would be extremely dangerous to Plaintiff, and, therefore, the diagnostic procedure cannot be used to determine the cause of Plaintiff's back pains. Her "heart" problem has been demonstrated by medically-acceptable clinical and laboratory diagnostic techniques to be a hiatus hernia which, though frightening, does not compare with heart trouble in seriousness.

Plaintiff complains that the hearing afforded her did not comply with the requirements of *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir.1981); *Clark v. Schweiker*, 652 F.2d 399 (5th Cir.1981); and *Crider v. Secretary*, 624 F.2d 15 (4th Cir.1980). The Plaintiff appeared with her husband and two friends for her hearing on December 13, 1983, with no counsel and with no apparent knowledge of such proceedings. The hearing lasted only 13 minutes, and there is a conflict between the Plaintiff's and Defendant Secretary's attorneys as to whether or not the ALJ solicited evidence of Dr. Thomas' findings between his last report dated September 12, 1983, and the December, 1983, hearing. This Court finds from the transcript at page 32 that the ALJ noticed the problem, asked about the reason for no current report and asked whether or not there was any difference. Upon receiving the answer, "No, it's the same", the ALJ, obviously recognizing the unnecessary delay and expense of seeking further reports from Dr. Thomas, proceeded with the hearing based on the evidence including reports from other doctors showing only "mild" abnormalities not one likely to result in death or inability to engage in gainful activity within the meaning of § 423(d).

■■■ While this Court is of the opinion that there is substantial evidence to support the findings of the ALJ, it appears to this Court that the ALJ failed to develop a full and fair record as required by *Cowart v. Schweiker*, supra, for pro se plaintiffs. Most judges have a duty to hear the evidence presented to them and consider the issues which have brought the parties into Court, whether or not counsel is present for both parties. The ALJ, however, in pro se Social Security cases has the duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" [*Cowart*, supra, at 735], be "especially diligent in insuring that favorable [as well as unfavorable] facts are elicited" [*Cowart*, supra, at 735], "state specifically the weight accorded to each item of evidence and why he reached that decision" [*Cowart*, supra, at 735], "articulate specific jobs that the claimant is able to perform which have been shown by substantial evidence and not mere intuition or conjecture of the Administrative Law Judge" [*Cowart*, supra, at 736], "perhaps even produce a vocational expert to testify as to this matter" [*Cowart*, supra, at 736], sufficiently question such vocational expert [*Cowart*, supra, at 736], elicit testimony and make findings regarding the effect of prescribed medications on the claimant's ability to work [*Cowart*, supra, at 737], and to afford an opportunity to the claimant to subpoena and cross-examine the medical experts who examined her and made reports thereon [*Cowart*, supra, at 737].

While this Court is gravely concerned about the effects of the requirements of *Cowart* wherein Plaintiff represents himself [see Appendix], this Court is of the opinion that, faced with the responsibilities set out in *Cowart*, the ALJ in this case failed to comply in that he failed to properly represent the Plaintiff in attempting to prove her case. To do this, he apparently would have been required to employ a doctor,[1] a vocational expert,[2] and possibly a lawyer when the law provides no adequate

---

1. Evidence of Plaintiff's use of medications such as cocaine may have contributed to her disability. A properly-instructed doctor possibly could have found evidence of abnormalities demonstrable by medically-acceptable clinical and laboratory diagnostic techniques.

2. A vocational expert was not called to demonstrate jobs which Plaintiff could have performed.

method of providing such experts and when the Plaintiff herself, burdened with the burden of proof, failed to furnish such evidence. Therefore, this Court concludes that the Plaintiff was denied a full and fair hearing before the ALJ and the case must be remanded with instructions for further proceedings consistent with this Opinion.

An Order will be entered in accordance with this Opinion.

### APPENDIX

This Court reluctantly exercises its well documented authority over the ALJ. It realizes some of the difficulties these requirements place on the ALJ and questions citations of authority (statutory and regulatory) for this Court to so regulate the ALJ.

An ALJ at the initial hearing, with documentary evidence thrust upon him more than one inch thick, will be hard put to determine what questions to ask of a bewildered plaintiff and other witnesses at the time of the scheduled hearing. Presumably, it is contemplated that the ALJ will consider the oral evidence along with the documentary evidence submitted at the hearing along with any brief either side may file and, if a pro se plaintiff fails at his first hearing to carry the burden of proof, the ALJ will secure such doctors and vocational specialists as he may think can review pertinent portions of the file or further examine the plaintiff so as to answer any pertinent questions the record leaves open. Thereafter, those experts will be deposed by the pro se plaintiff with the help of the ALJ and, after screening such evidence, such part as the ALJ considers competent will be considered along with the original evidence and all briefs the parties may wish to file in search of the final decision. This conception departs from the idea that one person cannot logically be expected to act effectively as lawyer and judge in the same proceeding. While the cases point out that Social Security cases are not adversary proceedings and that the ALJ must develop material evidence for either side, this Court, in 14 years on the bench, has heard of no case wherein an ALJ has been criticized for not seeking out evidence favorable to the Social Security Administration. Reviewing lawyers are always on the claimant's side. Neither can it be expected that the Government, the Social Security Administration or the plaintiff should reasonably be put to multiple trials limited only by the number of the ALJ's speculations as to what facts he may be able to develop from various witnesses, known or unknown. Presumably prudent lawyers would wish to respond in briefs to each issue raised by the parties or by the ALJ. Nor can it logically be expected that the Government, the already financially distressed Social Security Administration or the probably financially distressed plaintiff would be willing (if able) to fund such extensive proceedings. As in other fields of law, one bite at the apple should be all that the public should be expected to pay for.

Most of the cases requiring litigation by the ALJ involve a legitimate concern that, had the plaintiff been represented by adequate counsel, the ALJ would have duties only to adjudicate, not to litigate. The burden of proof in such cases is confusing in view of the following: Some cases [see *Ford v. Secretary*, 659 F.2d 66 (5th Cir., Unit B, 1981); *Thorne v. Califano*, 607 F.2d 218 (8th Cir.1979)] apparently attach no significance to whether or not plaintiff was represented by a lawyer before the ALJ. Cases, including *Cowart*, require extensive waiver of counsel proceedings otherwise unknown to the civil law although there is no constitutional right to an attorney except in criminal prosecutions. United States Constitution, Amendment VI. The right to an attorney before an ALJ is said to be statutory. The cases, *Cowart*, supra, *Ford*, supra, and *Clark*, supra, generally seem to agree that the right to counsel is provided by 42 U.S.C. § 406. That section simply prescribes the right of an attorney in good standing "to represent claimants before the Secretary." The right of the claimant to counsel is not dissimilar to the right of any claimant or plaintiff in any administrative or civil proceeding. No

such special duties as required by *Cowart,* supra, are prescribed by statute.

Regulations usually cited by courts to support the court-ordered duties of an ALJ are 20 C.F.R. § 404.971 [*Clark v. Schweiker,* 652 F.2d 399 (5th Cir.1981) ] and § 404.-927 (*Diabo v. Secretary,* 627 F.2d 278, 279 (D.C.Ct.1980) ]. Neither of these sections seems to apply. Section 404.971 refers to dismissals by the Appeals Council, and Section 404.927 refers to expedited appeals. However, 20 C.F.R. § 944 is in the form of a notice to the claimant that the ALJ "looks fully into the issues", questions witnesses, accepts material evidence, may allow time for development of missing material evidence, and may reopen the hearing to receive new material evidence. This apparently is the statutory and regulatory authority for the extensive guidelines for ALJs promulgated by courts of this nation.

An apparent inconsistency in the law is exemplified by reading two well documented sentences appearing in sequence in *Ford v. Secretary,* supra, at 69, as follows:

"* * * * [T]he Administrative decision is not supported by substantial evidence if the administrative law judge does not have before him sufficient facts on which to make an informed decision."

Nonetheless, the next sentence recognizes that:

"Claimants seeking disability benefits under the Social Security Act have the burden of proving that they are under a disability as defined by the Act."

The latter sentence taken from the statute would appear to conform to usual rules requiring one asserting the affirmative to prove such assertions (as are material). The former sentence, however, supported by a wealth of case law, gives notice that the ALJ may not find that the claimant has failed to prove his case unless the record shows that he cannot prove his case. It places the burden on the ALJ or, effectively, on the Secretary, to prove that the claimant is not disabled. Justification for

this conclusion, it is said [*Ford,* supra, at 69], lies in the wording of certain regulations: 20 C.F.R. § 404.927 requires the ALJ to "inquire fully into the matters at issue" and "afford the parties a reasonable opportunity for a fair hearing;" 20 C.F.R. § 404.927 and § 404.1527 allows the ALJ to order a consultative examination where warranted.* The *Ford* Court concluded that it was, therefore, decided in *Turner v. Califano,* 563 F.2d 669 (5th Cir.1977), that such a consultative examination is required if the "record establishes that such an examination is necessary to enable the administrative law judge to render a decision." *Ford,* supra, at 69. In short, if the claimant [carrying a statutory burden of proof, 42 U.S.C. §§ 416(i)(1) and 423(d)(2)(A) ] fails to offer evidence sufficient to prove his case, the ALJ has a duty (based upon construction of regulations) to attempt to prove claimant's case for him. If that assertion is not preposterous on its face, does it not become so when a regulation is construed to require proof by a judge where the statute authorizing the regulation requires proof by a claimant? This Court can find no statutory or regulatory authority why the claimant is not required to prove every material allegation of his claim or have his claim denied.

Perhaps this is the case wherein the court of final resort will reconsider the natural extremes which follow compliance with the requirements of *Cowart,* the plight of the ALJ in seeking to replace a lawyer with intimate knowledge of his case while maintaining the impartial reserve of the judge, the expense involved in providing the multiple discovery and hearings likely to result from a judge's instilling issues never conceived by the parties before the original trial, and the likelihood that the courts, in striving for perfect justice, will place court proceedings beyond the reach of the potential litigants.

The Social Security fund, once considered a spring which would never run dry, has,

---

* As pointed out, said subsection .927 does nothing of the kind. Subsection .1527 is in the form of a notice to the claimant that his doctor's finding of "disabled" is not necessarily controlling but is subject to consideration with other evidence.

by rules dictated by courts with little opportunity to study the cause or effect of judicially imposed regulations, become the subject of an insurance actuary's nightmare. This Court can think of no better example of the need for the constitutionally-imposed division of powers, leaving legislation and administration to governmental branches other than the judiciary.