**Jillian MASSIMINO, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

**No. 94 Civ. 0185 (DAB).**

United States District Court,
S.D. New York.

June 10, 1996.

Binder & Binder, Hauppauge, New York
(Charles E. Binder, of counsel), for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York, New York City (Sapna V. Raj, Assistant United States Attorney, of counsel), for Defendant.

## MEMORANDUM AND ORDER

BATTS, District Judge.

Jillian Massimino ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), for judicial review of a final decision of the Secretary of Health and Human Services ("Secretary") denying her application for disability insurance benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. § 401, *et seq.* Both parties have moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c). For the reasons set forth below, the Government's motion is granted, and Plaintiff's motion is denied.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed an action for Social Security Disability benefits on June 22, 1992. (Tr. at 49–52.)[1] Plaintiff's application was denied both initially, (Tr. at 62–65), and upon reconsideration. (Tr. at 66.) A hearing, at which Plaintiff appeared *pro se,* was held before Administrative Law Judge Linda E. Kupersmith ("ALJ") on April 14, 1993. (Tr. at 29–48.) In a decision dated May 21, 1993, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 17–26.) On November 19, 1993, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (Tr. at 2–3.) This was the final decision of the Secretary. (*Id.*) Plaintiff now seeks review of the Secretary's determination.

### B. Facts

Plaintiff was born on June 20, 1952. (Tr. at 34.) She has either twelve or fourteen years of education.[2] (Tr. at 35.)

---

1. "Tr" refers to pages of the Administrative Record filed with the Court.

2. The testimony on this point is ambiguous:

From May 1978 to December 1987, Plaintiff was employed as a secretary to a publisher. (Tr. at 36.) This job required her to use a computer, typewriter, and dictating machine. (Tr. at 37.) On January 15, 1988, an accident caused complete blindness in Plaintiff's right eye. (Tr. at 37, 44, 49.) Plaintiff alleges that this injury is so severe that she is unable to work at all, qualifying her for disability benefits.

Plaintiff's treating physician from July 10, 1992 through the hearing was Doctor Michael Starr, an ophthalmologist. (Tr. at 38, 101.) On August 12, 1992, Dr. Starr determined that Plaintiff "is currently disabled by her inability to perform her usual work at a computer terminal and reading." (Tr. at 106.) He had last examined Plaintiff on July 24, 1992, indicating that she had the following conditions: headaches and dizziness, (Tr. at 101); no light perception in her right eye, (Tr. at 102); 20/30 uncorrected and 20/15 corrected vision in her left eye, (*Id.*); no limitation on lifting, carrying, standing, walking, sitting, pushing, or pulling, (Tr. at 104); and a limitation on performing any activities for which full peripheral vision is required, (Tr. at 105).

During the hearing, the ALJ indicated that she had sent Plaintiff papers for her doctor to complete. (Tr. at 32.) Plaintiff, however, did not bring these papers to her doctor. (Tr. at 32–33.) The ALJ proceeded with the hearing without the papers after the following exchange:

CLMT: Is this—I don't know, is this it? Please include suf-ficient (sic) details of history, physical. No, I, I didn't go to a doctor with this because you have everything. I guess I figured you have everything.

ALJ: Okay. You have nothing else for me to consider. Is that correct?

CLMT: (No audible response)

ALJ: Everything's in the file. Is that what you're saying you want me to consider in this case? Is that yes or no?

ALJ: Our records show you completed fourteen years of schooling. Is that correct?
CLMT: Fourteen years of schooling? Twelve—yeah, yeah.
(Tr. at 35.)

CLMT: No. I'll say no.

ALJ: Well, I'm asking you, why didn't you have the papers filled out I asked you to take to the doctor? You just, you just contradicted yourself. One minute you said I didn't take the papers that you gave me to take to the doctor because everything's there to be considered.

CLMT: All right. Yes, everything's there to be considered.

ALJ: Well, I'm asking you. This isn't, this isn't—okay, this isn't changing—I'm asking you a question. Is everything here? This isn't let me see what's the best way to say it. I'm asking is everything—

CLMT: No, I'm not thinking of that. I'm just—

ALJ: Okay.

CLMT: I don't understand your question.

ALJ: Okay. I sent you papers. I didn't send them just, just to send—generate paperwork. I sent you papers to take to the doctor. Obviously you—

CLMT: No, I didn't—

ALJ: —looked at the file and everything is—

CLMT: —I didn't take them to the doctor.

ALJ: Okay. Would you please raise your right hand . . .

(Tr. at 33–34.)

More than a month after the hearing, Dr. Starr further reported that because "of the above mentioned symptoms[, Plaintiff] is totally and permanently disabled." (Tr. at 12.)

Plaintiff also indicated in her Disability Report for the Social Security Administration that she had seen two other doctors—Doctor Jackson Coleman of the Cornell Medical Center for six months in 1991 and Doctor Klaus Dohlman of the Massachusetts Eye and Ear Hospital for four months in 1986–1987. (Tr. at 88.) Despite having seen these doctors, Plaintiff offered no evidence at her hearing before the ALJ from these doctors. (See Tr. at 31–48.) Also, the ALJ did not request from Plaintiff any of these doctors' reports. (Id.)

In her decision dated May 21, 1993, the ALJ determined that Plaintiff was not completely disabled under the Act. (Tr. at 26.) The ALJ based this decision on two reasons. First, she reasoned that Dr. Starr had stated that "claimant was 'currently disabled' but only for purposes of her usual (past) work...." (Tr. at 22–23.) Thus, Plaintiff was not disabled for other work. (Tr. at 23.) Second, she reasoned that Plaintiff's subjective testimony of her own abilities plus her actions at the hearing were not consistent with being completely disabled. (Tr. at 22–23.) Based on the United States Department of Labor Dictionary of Occupational Titles ("DOT"), the ALJ then agreed with the state agency's finding that Plaintiff could perform the jobs of ticket taker, doorkeeper, and calendar control clerk at a blood bank. (Tr. at 24.) The decision of the ALJ was adopted by the Secretary as its final decision when the Appeals Council denied Plaintiff's request for review. (Tr. at 2.)

## II. DISCUSSION

A claimant is entitled to disability benefits under the Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of such severity that the person

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The presence of an impairment is thus not in and of itself disabling within the meaning of the Act. *Murphy v. Secretary of Health and Human Servs.*, 872 F.Supp. 1153, 1155 (E.D.N.Y.1994); *see also Spears v. Heckler*, 625 F.Supp. 208, 210 (S.D.N.Y.1985).

The Secretary has promulgated regulations establishing a framework in which to

evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Essentially, a five step analysis of the claimant's alleged disability is to be made.

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). The claimant bears the burden of proof as to the first four steps, and the Secretary bears the burden of proof as to the last step. *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S.Ct. 2287, 2293–94, 96 L.Ed.2d 119 (1987).

A district court reviewing a denial of benefits has a limited role. The court may not determine *de novo* whether the claimant is actually disabled. Rather, the court must affirm the Secretary's final determinations so long as they are supported by substantial evidence in the factual record and are not the product of legal error. 42 U.S.C. § 405(g); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir.1983). Substantial evidence means evidence that "a reasonable mind might accept as adequate to support a conclusion...." *Richardson v. Perales*, 402

U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (further citations and internal quotations omitted). Moreover, the Secretary's determination is afforded "considerable deference," and the reviewing court should not substitute "its own judgment for that of the Secretary, even if it might have justifiably reached a different result upon a de novo review." *Valente v. Secretary of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984). As the Second Circuit has stated: "Congress has instructed us that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive. We would be derelict in our duties if we simply paid lip service to this rule, while shaping our holding to conform to our own interpretation of the evidence." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983).

In deciding whether the ALJ's conclusions are supported by substantial evidence, a court must first determine whether the claimant received a complete and fair hearing. *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990). Furthermore, when "a claimant appears *pro se*, the ALJ has a heightened responsibility to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts[,] and the reviewing court must make a searching investigation of the record to ensure that the claimant's rights were protected." *Alvarez v. Bowen*, 704 F.Supp. 49, 53 (S.D.N.Y.1989) (internal citations and quotations omitted); *see also Gold v. Secretary of Health, Educ. and Welfare*, 463 F.2d 38, 43 (2d Cir.1972); *Barrera v. Secretary of Health and Human Servs.*, 872 F.Supp. 24, 27 (E.D.N.Y.1995).

Despite Plaintiff's appearance at the hearing *pro se*, the Court finds, for the reasons set forth below, that the ALJ fulfilled her obligation to develop the record fully.

According to the five-step analysis from *Schweiker*, the ALJ first found that Plaintiff was not currently engaging in any substantial gainful work. (Tr. at 20.) Second, she found that Plaintiff did suffer from a severe impairment. (*Id.*) Third, Plaintiff's impairment was not listed in Appendix 1 of the regulations. (*Id.*) Fourth, the ALJ found

that Plaintiff could not continue her past work with this condition. (Tr. at 21.) Thus, the ALJ next decided whether any other work existed in the national economy which Plaintiff could perform. Plaintiff contends that it is here that the ALJ did not fully develop the record.

■ Plaintiff claims that the ALJ failed to solicit enough information from Plaintiff's treating physician. Because the opinion of a treating physician regarding the nature and degree of a medical impairment deserves more weight than other sorts of evidence relevant in disability adjudications, *see* 20 C.F.R. § 404.1527(d); *Schisler v. Sullivan,* 3 F.3d 563 (2d Cir.1993), the ALJ has a duty to acquire enough information from the *pro se* claimant's treating physician to make her determination, *see, e.g., Flanders v. Chater,* No. 93–Civ–5671, 1995 WL 608287, at *7–8 (S.D.N.Y. Oct. 17, 1995); *Carroll v. Secretary of Dep't of Health and Human Servs.,* 872 F.Supp. 1200, 1204 (E.D.N.Y.1995). Here, the ALJ sent forms to Plaintiff for her treating physician to complete. (Tr. at 32.) Plaintiff, however, did not take any of the forms to her doctor. (Tr. at 34.)

■ Plaintiff relies on "new" evidence allegedly found in the statement Dr. Starr submitted June 23, 1993, over a month after the hearing, stating that Plaintiff "is totally and permanently disabled." (Tr. at 12.) In her decision, the ALJ relied upon reports by Dr. Starr dated July 24, 1992 and August 12, 1992. (Tr. at 22–23.) Those two reports detail various aspects of Plaintiff's condition and include Starr's conclusion that Plaintiff is disabled from performing her usual work, as opposed to being totally disabled. Except for the differing conclusions, the supportive bases of the three reports are essentially identical. The ALJ's decision details the same facts as Dr. Starr's subsequent report in June 1993: Plaintiff experiences headaches and dizziness and is blind in her right eye with 20/15 corrected vision in her left eye.[3] Both the June 1993 Report and Dr. Starr's report dated July 24, 1992, (Tr. at 101–105), contain descriptions of the same physical and functional limitations. Accordingly, adding nothing new but Dr. Starr's conclusory allegation that Plaintiff is "totally disabled," the June 1993 report does not suffice to say either that the ALJ lacked substantial evidence or that the ALJ failed to

3. Dr. Starr's opinion dated August 12, 1992 reads, in its entirety:

This letter is to request consideration for my patient, Ms. Jillian Massimino, who has been under my care for some time for an injury sustained to the right eye many years ago. Ms. Massimino has lost all light perception in this right eye and is currently disabled by her inability to perform her usual work at a computer terminal and reading. Monocular vision has become superimposed recently on presbyopia, and the patient is finding it impossible to adjust to the necessary near correction which would enable her to see clearly at a close distance for reading or looking at a video display terminal. The underlying reason for this problem is as yet unclear but any problem with accommodation in the left eye is most likely. Any consideration you might extend in evaluating the patient's claim for disability benefits would be greatly appreciated. I would welcome any further inquires from you regarding this matter if there are details you would like to further clarify. Please contact me at your earliest convenience regarding this if you wish. (Tr. at 7.)

Dr. Starr's opinion dated June 23, 1993 reads, in its entirety:

Please note that Jillian Laurain Massimino has been under my care for many years for treatment of what is now a blind right eye following trauma with a broken champagne bottle. Acuity in the right eye is no light perception and in the left eye is 20/15. The patient subjectively complains of headaches and dizziness since loss of vision in the right eye and is disabled from any vocation which necessitates stereopsis.

Because of the above mentioned symptoms she is totally and permanently disabled.

If I can provide additional information regarding this patient, please contact me at your convenience. (Tr. at 12.)

The ALJ states in her report:

Included as evidence are two reports from claimant's treating physician, Dr. Michael Starr, summarizing treatment since July 1986 for a condition diagnosed as traumatic phthisibulbi in the right-eye. The earlier of these reports, indicating claimant to have been last seen on July 24, 1992, describes her current symptoms as having been headaches and dizziness, and discomfort in the right orbital-region, with prosthesis. No light perception, and an otherwise total lack of effective vision, is described in the right eye; the left eye, as indicated by claimant at the hearing, is normal.... (Tr. at 22.)

fulfill her obligation to the *pro se* Plaintiff to develop the record fully.

Even had a lawyer represented Plaintiff and solicited the new report from Dr. Starr, nothing in that report alters the stated status of Plaintiff's physical or functional limitations, the heart of the ALJ's determination that Plaintiff is not disabled. (Tr. at 20–26.)

Plaintiff's other contention is that the ALJ erred in failing to develop the record as required by *Decker v. Harris,* 647 F.2d 291 (2d Cir.1981). In *Decker,* the Second Circuit recognized that there are two parts to the fifth prong of the analysis outlined above:

> First, the Secretary must show that the claimant's impairment is of a kind that still permits certain types of activity ... and that the claimant's experience involves skills transferable to other work. Second, the Secretary must present evidence showing the existence of specific types of jobs, available in the national economy, suitable for a claimant with these capabilities and skills.

*Id.* at 294. Plaintiff challenges the Secretary's conclusion regarding the second prong; she claims that in concluding Plaintiff could perform the jobs of ticket taker, doorkeeper, and calendar control clerk at a blood bank, the ALJ improperly relied only on the DOT without calling a vocational expert to testify.

The Secretary's reliance solely on the DOT to determine jobs Plaintiff can perform is not reversible error. The regulations promulgated by the Secretary allow the ALJ to take administrative notice that jobs listed in publications such as the DOT exist in substantial numbers in the national economy. 20 C.F.R. § 404.1566(d). "By relying on the DOT, the Secretary proved the existence of an alternative gainful activity existing in substantial numbers in the national economy." *Bardabelias v. Secretary of Health and Human Servs.,* No. 85 Civ. 4373, 1986 WL 14618, at *2 (E.D.N.Y. Oct. 31, 1986) (citing *Decker,* 647 F.2d at 294); *see also Evans v. Shalala,* 21 F.3d 832, 834 (8th Cir.1994). Furthermore, no vocational expert is necessary when administrative notice can be taken. *Decker,* 647 F.2d at 298 (citing *McLamore v. Weinberger,* 538 F.2d 572, 574 (4th Cir.1976)).

Even where administrative notice is properly taken, however, the ALJ must give a claimant the opportunity to rebut the presumption that she could perform the jobs listed in the DOT.

> [T]he simple recitation of the titles and coded numbers in the Dictionary of Occupational Titles may not have been sufficient to give the applicant fair notice of the nature and requirements of these relatively unfamiliar jobs, even assuming that he was provided access to the [administrative] report at or prior to the hearing before the ALJ. Without such notice [the claimant] may have been deprived, as a practical matter, of any real opportunity to present evidence rebutting the suitability of the jobs identified.

*Decker,* 647 F.2d at 299. The transcript of the hearing makes clear that the ALJ confirmed that Plaintiff had an opportunity to examine her file, which included pages from the DOT defining the jobs found suitable for Plaintiff. (Tr. at 31–32.) Though the ALJ did not inquire into Plaintiff's suitability for these positions with Plaintiff during the hearing, and did not specifically question Plaintiff at the hearing as to her suitability for the suggested jobs, there is substantial evidence in the record for the ALJ's factual findings, including the finding that Plaintiff is able to perform the stated jobs.

Further, despite Plaintiff having had access to the relevant job descriptions prior to her initial hearing, (Tr. at 31–32), and her now being represented by counsel, Plaintiff has yet to enunciate any evidence, other than her testimony at the hearing, tending to rebut application of the ALJ's designated suitable jobs. While the burden rests upon the Secretary to establish the existence of suitable jobs available in the national economy, there is substantial evidence in the record connecting the Plaintiff's capabilities and limitations with the requirements of the designated jobs as described in the DOT. Before seeking to send this action back to the ALJ for further consideration, the Plaintiff must put forward some suggestion that evidence overlooked by the ALJ would now result in a different determination. Nowhere in her

motion papers does Plaintiff explain, in a convincing fashion, that she is unable to perform the listed jobs. Though in a letter of appeal to the Appeals Council, Plaintiff's counsel does argue that Plaintiff is unable to perform the jobs designated by the ALJ in her decision, that argument lacks supporting medical evidence. The only evidence offered in support of Plaintiff's testimony that she is unable to lift or carry more than ten pounds is a letter from Dr. Kristjan T. Ragnarsson, M.D., dated July 7, 1993, (Tr. at 5–6). That letter, however, documents an injury occurring *after* the ALJ's hearing, and thus cannot support an argument that the ALJ failed to sufficiently develop the record at the time of the hearing. Further, Dr. Ragnarsson's report does not even state that Plaintiff is limited to lifting and carrying ten pounds. In fact it includes no limitations, in any amount; the most it offers in the way of a limitation is the statement: "Gross grasp measures 60 pounds bilaterally." [4] (Tr. at 5.) Accordingly, Plaintiff's testimony lacks supporting medical evidence, even in the medical submissions made *after* the ALJ's ruling. On this basis, the Court cannot say either that the ALJ lacked substantial evidence or that the ALJ failed to develop the record fully.

Though contrary to the testimony of the Plaintiff, the ALJ's findings are supported by substantial evidence. Accordingly, the Secretary's motion for judgment on the pleadings is hereby granted.

SO ORDERED.

---

4. Dr. Ragnarsson's report states:

Mrs. Massimino was seen in consultation in my office on July 7, 1993. She states that since last seen several years ago she has been generally healthy and has not experienced much back pain.... She was doing very well until ten days ago, that she bent over and developed severe pain in her left lower back and flank which has been present since. The pain has not been accompanied by any neurological symptoms such as numbness or weakness....

... Spine is symmetrical, but spine mobility is moderately restricted due to pain. Upon palpation there is moderate tenderness in the left lumbar paraspinal muscles and marked tenderness over the sacroiliac regions bilaterally more on the left than on the right. Joint range of motion is within normal limits. Neurological examination is within normal limits with respect to muscle strength, muscle trophy, deep tendon reflexes and sensation. Examination of her hands shows no gross swelling. There is no evidence of muscle atrophy. Gross grasp measures 60 pounds bilaterally. There are no sensory deficits.

