**Rosaura CENTANO, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 98 Civ. 5082(SAS).**

United States District Court, S.D. New York.

June 28, 1999.

Richard M. Nager, Binder and Binder, New York City, for plaintiff.

Susan D. Baird, Assistant United States Attorney, Southern District of New York, New York City, for defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Rosaura Centano brings this action under section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final determination of the Commissioner of Social Security (the "Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits. The Administrative Law Judge ("ALJ"), in his decision denying benefits, summarized the evidence contained in the transcript of the administrative record.[1] *See* Transcript ("Tr.") at 11–14. This decision became final when the Appeals Council denied plaintiff's request for review on March 11, 1998. *See* Tr. at 3–4.

▪ The Commissioner has moved for judgment on the pleadings, asserting that the decision finding plaintiff not disabled is supported by substantial evidence[2] and should be affirmed. Plaintiff has made a cross-motion for judgment on the pleadings seeking reversal of the Commissioner's decision and remand. She argues that: (1) she was not given a full and fair hearing, and (2) proper consideration was not given to the available medical evidence. *See* Notice of Cross–Motion ("Pl.'s Notice") at ¶ 1. This Court has reviewed the evidence and concludes that the Commissioner's decision should be affirmed for the following reasons.

### A. Standard of Review

In deciding disability claims, there is a five-step process that must be followed. *See* 20 C.F.R. § 416.920; *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999). Here, the ALJ first determined that plaintiff had not engaged in any substantial gainful activity since June 16, 1994, the date plaintiff claimed she became unable to work due to her impairments.[3] *See* Tr. at 14. Second, the ALJ determined that plaintiff's impairments, consisting of an anxiety disorder and asthma, are severe. In applying the

---

1. At the time of the hearing, plaintiff was not represented by counsel.

2. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

3. Plaintiff filed her first SSI application for on November 28, 1994. The application was denied on January 9, 1995. Plaintiff did not request reconsideration on the first decision, but filed a second application on June 16, 1995. *See* Tr. at 11.

third step, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that rose to the level of severity set out in the list of impairments. *See* 20 C.F.R., Part 404, Subpt. P, App. 1; Tr. at 14. In the fourth step of the evaluation, the ALJ found that the plaintiff had the residual functional capacity to perform work not involving lifting more than forty pounds or performing more than simple, repetitive tasks. *See* Tr. at 14. The ALJ also found that the plaintiff had performed past relevant work as a vegetable chopper and a garment presser,[4] work appropriate to the restrictions listed above. Therefore, the ALJ determined the plaintiff was not disabled. *Id.*

### B. Summary of the Medical Evidence

The medical evidence on which the ALJ relied consisted of reports filed by several treating physicians from plaintiff's Health Maintenance Organization ("HMO") and the testimony of two consulting physicians. *See* Tr. at 11–14, 114–74.

#### 1. Evidence on Plaintiff's Mental Impairment

Evidence in the record shows that plaintiff was treated by her HMO, Urban Health Plan ("UHP"), from 1991 through 1994. Plaintiff first went to UHP for symptoms of anxiety and insomnia on May 30, 1991. *See* Tr. at 143. Plaintiff was then referred to a psychiatrist at UHP, who administered a "Beck Depression Inventory", which indicated that plaintiff was borderline clinically depressed. Plaintiff was also found to have anxiety and insomnia. BuSpar and Vistaril were prescribed.[5] *See* Tr. at 148–51, 153–54. Plaintiff returned to UHP several times a year between 1991 and 1994 for refills on her prescriptions. *See* Tr. at 151–55.

Plaintiff began seeing Dr. Hernandez, a psychiatrist at UHP, on June 29, 1994, and continued seeing him through the date of the hearing. Treatment notes from Dr. Hernandez state that plaintiff's affect improved under his care, going from "intense" in June through September of 1994 to "appropriate", beginning in November of 1994. *See* Tr. 129, 131–32. Dr. Hernandez continued to refill plaintiff's prescriptions. *See* Tr. at 128–29, 131–32.

In a report dated December 19, 1994, Dr. Hernandez evaluated plaintiff's mental status and her ability to return to work. Dr. Hernandez stated that plaintiff's response to treatment was fair. He reported that plaintiff was "cooperative, clean-dressed [sic], had appropriate behavior, fair insight and judgment, relevant speech, no deficit in attention, concentration, orientation or memory," but had "an anxious, tense mood and an intense affect." He noted that plaintiff was able to maintain her residence and take public transportation. *See* Tr. at 120–22. In assessing her ability to function in a work setting, Dr. Hernandez wrote that plaintiff has no problems relating to supervisors or peers (Tr. at 122), but that her ability to do work-related mental activities was "limited", citing plaintiff's history of anxiety disorder. *See* Tr. at 122.

Dr. Kudler, a physician for the Social Security Administration, examined plaintiff on September 25, 1995. His diagnosis of an anxiety disorder and his assessment of plaintiff's work abilities generally concurs with Dr. Hernandez's findings. *See* Tr. at 56, 65. In assessing plaintiff's mental residual functional capacity, Dr. Kudler found that while plaintiff was moderately limited in her capacity to sustain certain activities in a normal work week, she was

---

**4.** A garment presser's duties include selecting pressing form according to shape of garment, positioning and locking form on holder, pulling garment over form and turning dial to regulate and activate steam pressure. *See Dictionary of Occupational Titles,* Code 363.685–018 (4th ed.1991).

**5.** Vistaril is used for symptomatic relief of anxiety and tension. *Physicians' Desk Reference* 2430 (53rd ed. 1999) ("PDR"). BuSpar is for the management of anxiety disorders. *Id.* at 823.

not significantly limited in her ability to carry out very short and simple instructions, remember locations and work-like procedures, be aware of normal hazards, and take appropriate precautions. Dr. Kudler described plaintiff as psychiatrically capable of simple, repetitive tasks in spite of her anxious mood. *See* Tr. at 57–59.

### 2. Evidence on Plaintiff's Physical Impairments

Plaintiff was also treated for asthma and minor medical problems from 1990 through 1995. Evidence in the record shows that plaintiff was treated at UHP for minor eye pain (*see* Tr. at 145), vaginal itching (*see* Tr. at 130, 140, 157, 161, 163–64, 167), pelvic pain (*see* Tr. at 133, 138, 158, 160), and a rash on her chest (*see* Tr. at 144, 162), but other than plaintiff's asthma, the record indicates no serious physical impairments.

Dr. Luis Rivera treated plaintiff for her asthma from 1991 through 1995. *See* Tr. at 104. In a report dated August 8, 1995, Dr. Rivera indicated plaintiff had a history of bronchial asthma and pharyngitis.[6] He stated that plaintiff's last mild asthmatic episode occurred on December 6, 1993, and her last chest x-ray, performed on August 3, 1994, showed her lungs to be clear. *See* Tr. at 171–73. He assessed plaintiff's work ability in lifting, carrying, standing, walking, sitting, pushing and pulling to be limited only by a maximum lifting weight of 40 pounds.[7] *See* Tr. at 173–74.

Dr. Wells, a consulting physician for the Social Security Administration, assessed plaintiff's physical residual functional capacity on August 22, 1995.[8] He reviewed Dr. Rivera's report and found that Dr. Rivera's evaluation limiting plaintiff to a maximum lifting weight of 40 pounds was not supported by medical evidence. Dr. Wells reported that with the exception of an environmental restriction on exposure to fumes, odors and poor ventilation due to her asthma, plaintiff was unrestricted in her work ability. *See* Tr. at 80, 82.

### 3. The Assessments of the Various Physicians

In short, consulting physicians Drs. Kudler and Wells concurred with the assessments of treating physicians Drs. Hernandez, Rivera, and other physicians at UHP [9] that plaintiff suffered from an anxiety disorder and mild asthma, but that neither impairment has severely limited her aspects of daily living or her ability to do her previous work. Dr. Hernandez's evaluation of plaintiff's mental status does not contradict Dr. Kudler's assessment that plaintiff can perform simple, repetitive tasks. Indeed, Dr. Hernandez's statements that plaintiff had no problems relating to her past supervisors and peers and that she was able to maintain her residence and take care of herself supports Dr. Kudler's assessment that plaintiff can perform simple, repetitive work-related tasks. The ALJ therefore based his decision that plaintiff was not disabled on the assessments of both the treating and consulting physicians.

### C. Developing the Record

Plaintiff also claims that the Commissioner failed in his duty to provide plaintiff with a full and fair hearing. *See* Pl.'s Notice at ¶ 1. Plaintiff alleges that her

6. Pharyngitis is an inflammation of tissues lining the pharynx. *Attorney's Illustrated Medical Dictionary* P29 (1997).

7. Lifting a maximum of 40 pounds falls into the range between light and medium work. *See* 20 CFR § 416.967.

8. It appears that Dr. Wells did not examine plaintiff but merely reviewed the report of Dr. Rivera.

9. UHP treatment records do not indicate the names of the psychiatrists who treated plaintiff before Dr. Hernandez. Signatures on the treatment records are illegible. *See* Tr. at 148–55. However, these records indicate plaintiff experienced symptoms of anxiety and insomnia, for which BuSpar and Vistaril were prescribed.

inability to communicate in English and her lack of representation at the hearing placed a heightened burden on the Commissioner to ensure that plaintiff received a full and fair hearing. In this case, the ALJ has met that burden. Plaintiff had an interpreter at the hearing and she voluntarily waived her right to counsel when questioned by the ALJ. *See* Tr. at 22.[10]

Plaintiff also alleges that the ALJ was under an obligation to further develop the record by: (1) requesting updated reports on plaintiff's mental status at the time of the hearing; and (2) investigating references to other physicians mentioned by plaintiff at the hearing. *See* Tr. at 32.

Regulations only require that the ALJ develop a complete medical history for at least twelve months preceding the month in which the application is filed. *See* 20 C.F.R. § 416.912(d). The most recent progress report from plaintiff's psychiatrist is dated June 29, 1995. As the application was filed on June 16, 1995 and the hearing was held on July 22, 1995, this requirement was met.

■■■ In a hearing on disability benefits, the ALJ has an affirmative duty to develop the administrative record. *See Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982). This requirement is heightened when plaintiff is proceeding *pro se*. *See Rich v. Apfel*, 97 Civ. 2288, 1998 WL 458056, at *9 (S.D.N.Y. Aug. 5, 1998) (finding that given the non-adversarial nature of the hearing, an ALJ has a duty to ensure that a *pro se* plaintiff has submitted the appropriate medical evidence into the record). An ALJ has no obligation to obtain additional medical records, however, if the record is complete. *See Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.1996) (holding that as the ALJ had a two year medi-

cal history from plaintiff's primary treating physician, there was no obligation to request evidence of tests from other physicians).

■ Here, the ALJ fulfilled his obligation to fully develop the record. The plaintiff's medical records are complete. Treatment notes from UHP on plaintiff's anxiety disorder extend from 1991 to 1994, and plaintiff's primary treating psychiatrist at UHP, Dr. Hernandez, submitted reports from 1994 to 1995. While only one report regarding plaintiff's treatment for asthma by Dr. Rivera, dated August 9, 1995, was submitted, he refers to visits in both 1993 and 1994 in his evaluation. As plaintiff filed her application for SSI benefits on June 16, 1995 (*see* Tr. at 53–55), the ALJ has sufficiently fulfilled his obligation. As to the evaluation of the evidence in the record, both treatment notes and residual functional assessments from plaintiff's primary treating physicians are in the record, and those assessments generally concur with the evaluations of the consulting physicians.

As to her contention that the ALJ failed to investigate references to other physicians, plaintiff made reference to only one other doctor during the hearing (Tr. at 32)——Dr. Rivera who had since died. She provided no details as to the length or dates of treatment. However, when asked who her doctor was, she replied "Dr. Rivera from another clinic." *Id.* This second Dr. Rivera, namely Dr. Luis Rivera, has treated plaintiff since 1991. *See* Tr. at 104. Accordingly, any reports or diagnoses from the first Dr. Rivera, if in fact he is another doctor, would be superceded by the more current findings of Dr. Luis Rivera. Therefore, the ALJ had no duty to obtain these earlier reports which are arguably irrelevant to plaintiff's condition

---

10. At the start of the hearing the ALJ stated "Now Ms. Centano, some time ago you received notice that you had a right to appear here today and be represented by a lawyer or other qualified individual, is that correct?" When plaintiff responded yes, he continued, "Now you've come here today without a representative. Does that mean you wish to proceed on your own?" Plaintiff said "Yes, I want to continue because I called the offices and nobody was available." Tr. at 22–23.

at the time of filing. *See Massimino v. Shalala,* 927 F.Supp. 139, 144 (S.D.N.Y. 1996) (holding that ALJ had no further obligation to develop the record since treating physician's reports supported a finding of not disabled).

### D. Plaintiff's Subjective Symptoms

 After evaluating plaintiff's impairments, the ALJ must consider plaintiff's subjective symptoms of pain. *See* 20 C.F.R. § 416.929; *McLaughlin v. Secretary of Health, Educ. & Welfare,* 612 F.2d 701, 704–05 (2d Cir.1980) (holding that a plaintiff's subjective symptoms of pain may serve as a basis for establishing disability). Plaintiff's symptoms of pain, however, are not dispositive as to the ALJ's determination. The ALJ may use other evidence in the record to support his finding. *See* 20 C.F.R. § 416.929; *Marcus v. Califano,* 615 F.2d 23, 27, (2d Cir.1979) (holding that ALJ is not obliged to accept without question the credibility of subjective evidence); *McLaughlin,* 612 F.2d at 705 (allowing ALJ to use his discretion in disregarding plaintiff's testimony on subjective symptoms of pain in light of other evidence). The ALJ's decision to discount plaintiff's subjective complaints of pain must be accepted by a reviewing court unless it is clearly erroneous. *See Aponte v. Secretary, Dep't of Health and Human Servs.,* 728 F.2d 588, 591 (2d Cir.1984); *Gernavage v. Shalala,* 882 F.Supp. 1413, n. 6 (S.D.N.Y.1995) ("Deference should be accorded the ALJ's determination because he heard plaintiff's testimony and observed his demeanor.")

 Here, plaintiff testified at the hearing that she spends most of the day crying, and she is unable to leave the house alone because her mind becomes blank. She stated that she is unable to take public transportation because she becomes afraid and anxious. *See* Tr. at 30–32. The ALJ found that plaintiff's description of the frequency and severity of symptoms of emotional pain were not fully credible in light of the medical evaluations. *See* Tr. at 14.

Accordingly, this Court must accept the ALJ's conclusion with respect to plaintiff's subjective complaints of pain.

The Commissioner's decision denying plaintiff SSI benefits is supported by substantial evidence and is hereby affirmed. The Clerk of the Court is directed to close this case.